PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, McCullough and Senior Judge Haley
Argued at Chesapeake, Virginia

CULPEPER REGIONAL HOSPITAL

> OPINION BY
v.     Record No. 0320-14-2     JUDGE STEPHEN R. McCULLOUGH
> JANUARY 13, 2015

CYNTHIA B. JONES, DIRECTOR AND
  DEPARTMENT OF MEDICAL ASSISTANCE SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

> Kathryn E. Kasper (Eileen R. Geller; Hancock, Daniel, Johnson &
> Nagle, P.C., on briefs), for appellant.
>
> Elizabeth M. Guggenheim, Assistant Attorney General (Mark R.
> Herring, Attorney General; Cynthia V. Bailey, Deputy Attorney
> General; Kim F. Piner, Senior Assistant Attorney General, on brief),
> for appellees.

The Director of the Department of Medical Assistance Services, DMAS, concluded that

Culpeper Regional Hospital failed to make a certification required by law before admitting patients

for treatment. Based on this failure to certify, the Director ordered the Hospital to refund certain

Medicaid payments. The Circuit Court for the City of Richmond upheld the Director's decision.

The Hospital appeals, arguing that: (1) the Hospital's form admitting a patient for treatment, which

is signed by a physician, satisfies the certification requirement; (2) alternatively, if the Hospital's

certification was deficient, the Hospital's substantial compliance with its contractual obligations

excuse the absence of a certification; and (3) finally, the Director and the circuit court should have

adopted the hearing officer's recommendation. For the reasons noted below, we affirm.

BACKGROUND

Culpeper Regional Hospital is a seventy-bed community hospital located in Culpeper, Virginia. The Hospital is a participating provider in the Medicaid program. DMAS is the agency charged with administering the Medicaid program for Virginia. According to the Provider Participation Agreement between the Hospital and DMAS, the Hospital must "comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended."

DMAS issues a Hospital Manual that contains applicable policies and procedures. The Manual specifies that "[p]roviders will be required to refund payments made by Medicaid if they are found to have . . . failed to maintain any record or adequate documentation to support their claims." Hosp. Manual, ch. VI, at 2 (June 12, 2006).[1]

On October 24, 2011, DMAS informed the Hospital that an audit identified deficiencies in the Hospital's documentation. Specifically, the auditor determined that the Hospital failed to certify that admitting certain patients for inpatient treatment was medically necessary. Based on this failure, DMAS claimed it was entitled to recoup $46,760.10 in Medicaid payments it made to the Hospital. The Hospital argued that a patient's admission form is sufficient to satisfy the certification requirement and, in the alternative, that its substantial compliance with the contractual agreement precluded DMAS from recovering any past payments.

The Hospital eventually sought a formal appeal hearing pursuant to Code § 32.1-325.1. The Hospital withdrew its appeal for two of the patients at issue, leaving an amount in controversy of approximately $36,000. At the hearing, the Hospital contended that the Admission Order Forms,

---

[1] The Manual was revised in 2009. The only substantive difference between the 2006 Manual and the 2009 Manual, as relevant here, is that the 2009 Manual provides that the physician may complete, sign, and date the certification within twenty-four hours of admission rather than at the time of admission. That change is not at issue in this appeal.

which were signed by a physician, satisfied the certification requirement. One of the Hospital's physicians testified that, in his eyes, the admission form is "my certification. That's my word. That's my name. And I'm taking responsibility of it." The hearing officer found in favor of the Hospital, concluding that the Hospital's records were satisfactory and that DMAS's interpretation of the law was "arbitrary and capricious." DMAS appealed. The Director overturned the hearing officer's decision, finding his conclusion constituted "an error of law and Department policy." The Director upheld the retraction of payment. The Hospital appealed to the Circuit Court for the City of Richmond, which upheld the Director's decision. The instant appeal followed.

ANALYSIS

The facts are not in dispute. The questions at issue in this appeal are matters of law. We review an agency's legal determinations *de novo*, while taking "due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 2.2-4027. See 1st Stop Health Services, Inc. v. Department of Medical Assistance Services, 63 Va. App. 266, 276-77, 756 S.E.2d 183, 188-89 (2014).

Federal regulations require a physician to "certify for each applicant or beneficiary that inpatient services in a hospital are or were *needed*." 42 C.F.R. § 456.60(a)(1) (emphasis added). The Provider Participation Agreement further requires the Hospital to "comply with . . . administrative policies and procedures of [DMAS] as from time to time amended." The Hospital Manual issued by DMAS provides that "Medicaid requires that payment for certain covered services may be made to a provider of services only if there is a physician's certification concerning the necessity of the services furnished . . . ." Hosp. Manual, supra, ch. VI, at 2. "A physician must certify the need for inpatient care **at the time of admission.**" Id. at 3 (emphasis is original). "The certification must be dated at the time it is signed." Id. Furthermore, "[t]he certification must be in

writing and signed by an individual clearly identified as a physician (M.D.), doctor of osteopathy (D.O.), or dentist (D.D.S.)." Id.

Neither the Manual nor applicable regulations specify any particular wording or format for the required certification. The Manual provides,

> The certification may be either a separate form to be included with the patient's records or a stamp stating "Certified for Necessary Hospital Admission" which must be made an identifiable part of the physician orders, history, and physical or other patient records. This certification must be signed and dated by the physician at the time of admission or, if an individual applies for assistance while in the hospital, before payment is to be made by DMAS.

Id.

### I. THE HOSPITAL DID NOT CERTIFY THE NEED FOR INPATIENT CARE.

The Hospital first argues that DMAS has imposed an "unwritten, unknown standard" on the Hospital by faulting the Hospital for failing to include "certifying language" or an "authoritative attestation" in the Hospital's records. Opening Br. at 10. It contends that checkboxes on the Admission Order Form indicating "inpatient status," along with a physician signature and date, are sufficient to satisfy its obligation.

Although the regulation and the Manual do not define the term "certification," it has a plain meaning. "Certification" is simply "the act of certifying," Webster's Third New International Dictionary 367 (1981), and to "certify" means "to attest . . . authoritatively or formally." Id. Whatever form it takes, the certification is an additional step beyond simply admitting the patient. Merely admitting a patient does not constitute a formal act declaring that "inpatient services in a hospital are or were needed." 42 C.F.R. § 456.60(a)(1). Instead, the admission form only admits the patient for treatment. The Hospital's interpretation would render the certification requirement

- 4 -

superfluous, and we will not construe statutes or regulations in such a manner.  See, e.g., Cnty. of Albemarle v. Camirand, 285 Va. 420, 425, 738 S.E.2d 904, 906-07 (2013).[2]

II.  THE CONTRACT DISPLACES ORDINARY PRINCIPLES OF SUBSTANTIAL COMPLIANCE.

Alternatively, the Hospital argues that it substantially complied with the regulations governing the Medicaid program, that the failure to certify is a minor breach, and that DMAS does not contend that the Hospital provided unnecessary services.

The agreement between DMAS and the Hospital is governed by the law of contracts.  See Psychiatric Solutions of Va., Inc. v. Finnerty, 54 Va. App. 173, 176, 676 S.E.2d 358, 359 (2009). The law of contracts supplies a number of default rules that govern contract interpretation.  For example, the law generally presumes that, in contracts for the sale of real estate, time is not of the essence.  Cranford v. Hubbard, 208 Va. 689, 694, 160 S.E.2d 760, 764 (1968).  Nevertheless, the parties to a contract may agree to displace this default rule, and "'[t]ime may be made of the essence of the contract by express stipulation.'"  Id. (citation omitted).

Another default rule is that of "material breach" and "substantial compliance."  The Supreme Court has recognized that,

> [g]enerally, a party who . . . breach[es] . . . a contract is not entitled to enforce the contract.  An exception to this rule arises when the breach did not go to the "root of the contract" but only to a minor part of the consideration.
>
> If the . . . breaching party committed a material breach, however, that party cannot enforce the contract.  A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.

---

[2] Invoking the void for vagueness doctrine, the Hospital argues that its rights to due process were violated when DMAS "impos[ed] a requirement that was altogether absent from the relevant Manual provisions and the applicable federal regulation."  Opening Br. at 13.  This argument fails, first, because DMAS has done no such thing.  Second, the argument is not encompassed by any assignment of error.  Accordingly, it is barred for that reason as well.  See Rule 5A:20(c); Ceres Marine Terminals v. Armstrong, 59 Va. App. 694, 698 n.1, 722 S.E.2d 301, 303 n.1 (2012); cf. Rule 5A:12(c)(1)(i).

Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d 200, 203-04 (1997) (quoting Fed. Ins. Co. v. Starr Elec. Co., 242 Va. 459, 468, 410 S.E.2d 684, 689 (1991)); see also Akers v. James T. Barnes of Wash., D.C., Inc., 227 Va. 367, 371, 315 S.E.2d 199, 201 (1984). Substantial compliance is the inverse of the proposition that a breach of the contract must be "material" or significant before it will excuse non-performance. See Restatement (Second) of Contracts § 237, cmt. d (1981) ("The considerations in determining whether performance is substantial are those listed in § 241 for determining whether a failure is material.").

We addressed substantial compliance in the context of provider agreements in Psychiatric Solutions. In that case, we held that "contract principles applied to the interpretation of the provider agreement and that, under settled principles of contract law, appellant would be entitled to payment if its noncompliance did not amount to a material breach of the agreement." Psychiatric Solutions of Va., Inc., 54 Va. App. at 176, 676 S.E.2d at 359-60. We concluded that the provider did not substantially comply because, on those facts, its documentation deficiencies were material. Id. at 190-91, 676 S.E.2d at 367. We rejected the argument that the failures to document represented a "'trifling' technical deficiency in the documentation of those sessions." See id. at 191-92, 676 S.E.2d at 367. Instead, as a factual matter, DMAS established that the documentation failure "significantly impacted" the ability to provide care and, therefore, was a material breach. See id. at 192, 676 S.E.2d at 367-68.

We were called upon to revisit the issue of substantial compliance in 1st Stop Health Services, Inc. We again concluded that the provider's documentation failures were material. 63 Va. App. at 270, 756 S.E.2d at 185. The provider's documentation in that case was "'abysmal' to the point [that] the auditor [could not] determine that certain payments were justified." Id. at 280, 756 S.E.2d at 190. We also pointed to the language of the Provider Agreement and the

applicable DMAS Manual to hold that the retraction of payment was a plainly authorized remedy for the provider's failure to maintain the required documentation. Id. at 281, 756 S.E.2d at 191.

Turning to the case at bar, we find that the language of the agreement controls. The Provider Agreement requires the Hospital to follow the provisions of the Manual. The Manual unambiguously requires providers "to refund payments made by Medicaid if they are found to have . . . failed to maintain any record or adequate documentation to support their claims." Hosp. Manual, supra, ch. VI, at 2. The Hospital was required to "certify for each applicant or beneficiary that inpatient services in a hospital are or were needed." 42 C.F.R. § 456.60(a)(1). The Hospital failed to make this required certification. DMAS could enforce the terms of the agreement and require repayment for patients that were admitted without the required certification. Accordingly, the Director was entitled to set aside, as contrary to law, the hearing officer's decision in favor of the Hospital.

The retraction of payment under the facts before us, where there is no allegation of self-dealing or impropriety by the Hospital, may come across as harsh and formalistic. Nevertheless,

> It is the function of the court to construe the contract made by the parties, not . . . to alter the contract they have made so as to conform it to the court's notion of the contract they should have made in view of the subject matter and the surrounding facts and circumstances. . . . The court . . . is not at liberty . . . to put a construction on the words the parties have used which they *do not properly bear*. It is the court's duty to declare what the *instrument itself* says it says.

Ames v. Am. Nat'l Bank of Portsmouth, 163 Va. 1, 38, 176 S.E.204, 216 (1934) (emphasis in original). Moreover, courts will not set aside a contractual provision simply because it constitutes a "'hard bargain.'" Payne v. Simmons, 232 Va. 379, 384, 350 S.E.2d 637, 640 (1986) (quoting Long v. Harrison, 134 Va. 424, 441-42, 114 S.E. 656, 661-62 (1922)).

Accordingly, we affirm the judgment below.

## CONCLUSION

We affirm the judgment of the Circuit Court for the City of Richmond.

Affirmed.