COURT OF APPEALS OF VIRGINIA

Present:   Judges McCullough, Chafin and Russell
Argued at Richmond, Virginia

BON SECOURS ST. MARY'S HOSPITAL

MEMORANDUM OPINION[*] BY
v.      Record No. 0839-15-2              JUDGE TERESA M. CHAFIN
                                          JANUARY 19, 2016
CYNTHIA B. JONES, DIRECTOR, AND
  DEPARTMENT OF MEDICAL ASSISTANCE
  SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

Kathryn E. Kasper (Eileen R. Geller; Hancock, Daniel, Johnson &
Nagle, P.C., on briefs), for appellant.

Elizabeth M. Guggenheim, Assistant Attorney General (Mark R.
Herring, Attorney General; Cynthia V. Bailey, Deputy Attorney
General; Kim Piner, Senior Assistant Attorney General, on brief),
for appellee.


The Director of the Department of Medical Assistance Services ("DMAS" or the

"Department") issued a final agency decision ("FAD") requiring Bon Secours St. Mary's

("St. Mary's" or "Provider") to reimburse the Department $424,718.50 based on a failure to

maintain adequate documentation.  St. Mary's appealed the FAD to the Circuit Court for the City of

Richmond, which affirmed the Department's decision.  St. Mary's now appeals to this Court.

Background

St. Mary's is a participating provider in the Medicaid program.  DMAS is the agency

charged with administering the Medicaid program in Virginia.  According to the Provider

Participation Agreement between St. Mary's and DMAS, St. Mary's must "comply with all

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended."

DMAS issues a Hospital Manual ("Manual") that contains applicable policies and procedures. The Manual specifies that "[p]roviders will be required to refund payments made by Medicaid if they are found to have . . . failed to maintain any record or adequate documentation to support their claims." Hosp. Manual, Chapter VI, p. 2 (June 12, 2006).[1]

On December 29, 2011, DMAS informed St. Mary's that an audit identified deficiencies in the St. Mary's documentation. Based upon the auditor's findings, DMAS claimed it was entitled to recover $424,718.50 in Medicaid payments it made to St. Mary's. According to the auditor's findings, the retraction was due to the absence of certifications and/or recertifications that complied with federal regulations and DMAS policies for eleven Medicaid recipients. The auditor identified two types of documentation deficiencies, represented by Error Codes 102 and 103. Error Code 102 was assigned to recipients MHG, GMG, JD, LD, GW, BLH, SAN, KSC, and MWC, because the recipients' records lacked the initial certification that inpatient services were needed. Error Code 103 was assigned to recipients MHG, GMG, OD, LD, CNR, JD, and GW, because the recipients' records lacked the necessary recertification within 60 days of the initial certification.

St. Mary's appealed the overpayment determination and requested an informal fact finding conference ("IFFC") pursuant to Code § 2.2-4019 and 12 Va. Admin. Code. 30-20-540 (2015). An IFFC decision affirming the determination of overpayment was issued on July 10, 2012.

---

[1] The Manual was revised in 2009. The only relevant difference between the 2006 and 2009 Manual is that the 2009 Manual provides that the physician may complete certification within twenty-four hours of admission rather than at the time of admission. That change is not at issue on appeal.

Appellant appealed the IFFC decision pursuant to Code § 2.2-4020 and 12 Va. Admin. Code 30-20-560 (2015). Following a *de novo* evidentiary hearing, Hearing Officer Roger L. Chaffe issued his recommended decision ("RD") on January 9, 2013. The RD recommended that the Director uphold the overpayment determination in its entirety, reasoning that St. Mary's

> violated clear federal regulatory requirements as implemented by the Medicaid state plan and the Hospital Manual. For that reason alone, retraction of payment is appropriate. Moreover, if contract law analysis is used, these violations constitute a material breach of the Provider's agreement with DMAS, thereby disqualifying Provider from a contractual recovery as a matter of law.

Recommended Decision of Hearing Officer (Jan. 9, 2013), at 17-18. The Director's FAD accepted the hearing officer's recommendations and upheld the overpayment determination. St. Mary's appealed the FAD to the Circuit Court for the City of Richmond, which upheld the Director's decision. This appeal followed.

<u>Analysis</u>

This Court reviews an agency's determinations of law *de novo*, while taking "due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 2.2-4027. <u>See</u> <u>1st Stop Health Servs. v. Dep't of Med. Assistance Servs.</u>, 63 Va. App. 266, 276-77, 756 S.E.2d 183, 188-89 (2014).

"Federal regulations require a physician to 'certify for each applicant or beneficiary that inpatient services in a hospital are or were needed.'" <u>Culpeper Reg'l Hosp. v. Jones</u>, 64 Va. App. 207, 211, 767 S.E.2d 236, 238 (2015) (quoting 42 C.F.R. § 456.60(a)(1)). Recertifications "must be made at least every 60 days after certification." 42 C.F.R. § 456.60(b)(2). The Manual provides that "Medicaid requires that payment for certain covered services may be made to a provider of services only if there is a physician's certification

- 3 -

concerning the necessity of the services furnished and, in certain instances, only if there is a physician's recertification as to the continued need for the covered services." Hosp. Manual, Chapter VI, p. 2.

"A physician must certify the need for inpatient care at the time of admission." Id. at 3. "The certification must be dated at the time it is signed." Id. Furthermore, "[t]he certification must be in writing and signed by an individual clearly identified as a physician (M.D.), doctor of osteopathy (D.O.), or dentist (D.D.S.)." Id. "A physician, physician assistant or nurse practitioner acting within the scope of practice as defined by state law and under the supervision of a physician must recertify for each patient that inpatient services in a hospital are needed. Recertification must be made at least every 60 days after certification." Id. at 5.

According to the Manual, it is at the discretion of each provider to determine the method by which the required physician certification and recertification statements are to be obtained. Id. at 2.

> There is no requirement that a specific procedure or specific forms be used, so long as the approach adopted by the provider permits verification that the requirement of physician certification and recertification . . . is met. Certification and recertification statements may be entered on or included in forms, notes, or other records a physician normally signs in caring for a patient, or a separate form may be used. Each certification and recertification statement is to be separately signed by a physician, except as otherwise specified . . . .
>
> The requirements for recertification . . . specify certain information that is to be included in the physician's statement. It should be noted that this required information need not be repeated in a separate statement if, for example, it is contained in the physician's progress notes. The physician's statement may merely indicate where the required information is contained in the patient's medical record.

Id. at 2-3.

The Manual also states that

> The certification may be either a separate form to be included with the patient's records or a stamp stating "Certified for Necessary Hospital Admission" which must be made an identifiable part of the physician orders, history, and physical or other patient records. This certification must be signed and dated by the physician at the time of admission or, if an individual applies for assistance while in the hospital, before payment is to be made by DMAS.

Id. at 3.

## A.  INITIAL CERTIFICATION

St. Mary's first contends that the circuit court erred in upholding the Director's FAD affirming the overpayment determination.  St. Mary's claims that "a simple comparison of the minimal certification requirements against the forms maintained by St. Mary's demonstrates that there is not substantial support for the circuit court's decision . . . and that a reasonable person looking at the evidence in this case would necessarily come to an opposite conclusion."

In this case, St. Mary's primarily relies on a form entitled "NICU ADMISSION ORDERS" for its certifications.  As testified to by one of its physicians, Bonita J. Makdad, M.D., this form was created by St. Mary's in order to comply with legal requirements, including the certification requirement.  The NICU ADMISSION ORDERS forms contain a block at the top (the "certification block") with the phrase "Hospitalization certified for the following reasons:" followed by a blank space.  At the top of the certification block is the word "Date:" followed by a blank space and the phrase "Estimated Length of Stay:" again followed by a blank space.  At the bottom of the certification block are the words "Physician Signature:" followed by a blank space.  In addition to the certification block, the form contains two lower blocks entitled "ORDERS" and "MEDICATIONS & I.V. FLUID ORDERS."  Below these two blocks, there is a blank line under which the words "Physician Signature" and "Date/Time" are preprinted.

On its face, the form prompts the physician who is completing it to sign in two separate and distinct places – first, in the certification block, and second, in the bottom right corner of the form under the "ORDERS" and "MEDICATIONS & I.V. FLUID ORDERS" blocks. The evidence clearly shows that St. Mary's failed to properly complete the form for six of the nine recipients included in the audit.

1. JD: the form is signed by a non-physician, then countersigned by a physician, but does not appear to be dated by the countersigning physician.
2. LD: the form is not signed or dated by a physician.
3. GW: the form is signed by a physician but not dated.
4. MWC: the certification block is signed by a physician but not dated.

For recipients SAN and KSC, St. Mary's relies on a different form. For SAN, the form is signed but the signature is not dated. The form contains certification language but the certification is unclear. The form states: "Hospital admission is certified for the following reason(s)." Following that statement are two statements, each preceded by a blank line. No mark or other notation on the lines indicates which, if any, of those statements applies. For KSC, the form is similarly deficient. The form is signed but the signature is not dated. The form also contains certification language followed by two statements, each preceded by a blank line. Again, there is no mark or other notation on the lines to indicate which, if any, of those statements applies.

> Although the regulation and the Manual do not define the term "certification," it has a plain meaning. "Certification is simply "the act of certifying," Webster's Third New International Dictionary 367 (1981), and to "certify" means "to attest . . . authoritatively or formally." Id. Whatever form it takes, the certification is an additional step beyond simply admitting the patient. Merely admitting a patient does not constitute a formal act declaring that "inpatient services in a hospital are or were needed." 42 C.F.R. § 456.60(a)(1).

Culpeper Reg'l Hosp., 64 Va. App. at 212, 767 S.E.2d at 239.

While there is no prescribed manner in which the initial certification must be executed, it is the burden of St. Mary's to ensure that initial certifications are made in accordance with federal and Virginia Medicaid requirements. St. Mary's created its own forms, and the forms contain the necessary elements for compliance. However, it is clear from the record that St. Mary's failed to use the forms in the manner that they were designed for six of the nine recipients at issue in this case. Thus, the circuit court did not err in affirming the FAD as to initial certifications for JD, LD, GW, MWC, SAN, and KSC.

However, we must reverse the circuit court's decision to affirm the FAD as to initial certification for MHG, GMG, and BLH. The forms used for initial certification for these recipients are clearly dated and signed by a physician. Thus, they are compliant under the federal regulations and state requirements.

Code § 2.2-4029 states in relevant part that when a court has determined an agency has committed an error of law, that court:

> may compel agency action unlawfully withheld . . . except that the court shall not itself undertake to supply agency action committed by the basic law to the agency. Where . . . a case decision is found by the court not to be in accordance with law under § 2.2-4027, the court shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law.

Here, the circuit court upheld the DMAS decision as to initial certification for MHG, GMG, and BLH. This decision constituted error.

As this Court stated in <u>Virginia Imports v. Kirin Brewery of America</u>, 41 Va. App. 806, 831, 589 S.E.2d 470, 482 (2003):

> If a court finds that an agency has failed to comply with statutory authority, "the court shall suspend or set the decision aside and remand the matter to the agency." <u>Virginia Bd. of Medicine v. Fetta</u>, 244 Va. 276, 280, 421 S.E.2d 410, 412 (1992); Code § 2.2-4029. Hence, having found in this case that the ABC Board

- 7 -

had "failed to address and rule upon all the issues raised by Kirin with respect to its grounds for termination of the agreement," the circuit court, rather than imposing its own judgment on the matter, should have suspended the ABC Board's decision and remanded the matter back to the ABC Board with instructions to make the additional required factual determinations.

See also Fetta, 244 Va. at 280, 421 S.E.2d at 413 ("The court itself may not undertake the agency action directly.").

Accordingly, we reverse the decision of the circuit court affirming the FAD as to initial certification for MHG, GMG, and BLH. We remand to the circuit court with directions to set aside the decision of the Director as to those specific initial certifications and to remand to DMAS.

### B. RECERTIFICATION

The federal regulation requires that "[a] physician, or physician assistant or nurse practitioner acting . . . under the supervision of a physician, must recertify for each applicant or beneficiary that inpatient services in a hospital are needed . . . [and] recertifications must be made at least every 60 days after certification." 42 C.F.R. § 456.60(b). The Manual provides "[e]ach certification and recertification statement is to be separately signed by a physician." St. Mary's relied primarily on progress notes that did not contain a recertification. Dr. Makdad testified that the purpose of these documents is to determine the overall status of the patient and that she was unable to locate language in the progress notes that constituted a recertification. See App. at 507-08. To accept St. Mary's interpretation would, as this Court stated in Culpeper, render the requirements superfluous. Culpeper Reg'l Hosp., 64 Va. App. at 212, 767 S.E.2d at 239.

In Culpeper, the appellant submitted admission orders and claimed that they were sufficient to meet the requirements of 42 C.F.R. § 456.60 even though there was no certification

contained within the documents, and the documents were clearly intended to admit the patient for treatment only. See id. ("Instead, the admission form only admits the patient for treatment."). This Court rejected the appellant's argument. This case presents the same scenario as Culpeper: attempting to take documents that were clearly intended for one purpose, in this case to determine the overall status of the patient, and asking the Court to infer that it intended the document for other purposes, in this case recertification.

While the Manual provides that progress notes may be used for recertification, the recertification language must be included within the progress notes and the physician must include a statement indicating where the required information is contained in the patient's medical record. In this case, the recertification language was not included in the progress notes nor is there any indication that the physicians included a statement indicating where the required information was contained in the medical records. Thus, the circuit court did not err in affirming the FAD as to recertifications.

## C. COMPLIANCE WITH FEDERAL REGULATIONS AND STATE REQUIREMENTS

St. Mary's acknowledges that the Provider Agreement (the "Agreement") between DMAS and St. Mary's is governed by the law of contracts. Id. at 213, 767 S.E.2d at 239. However, St. Mary's contends that the alleged deficiencies at issue in this appeal do not amount to a material breach of the Agreement. St. Mary's also argues that by including certification language in its forms, St. Mary's has substantially complied with the requirements of the Manual necessitating a holding different from that reached in Culpeper.

"The law of contracts supplies a number of default rules that govern contract interpretation. . . . [One] default rule is that of 'material breach' and 'substantial compliance.'" Id.

> "Generally, a party who . . . breach[es] . . . a contract is not entitled to enforce the contract. An exception to this rule arises when the breach did not go to the 'root of the contract' but only to a minor part of the consideration.
>
> If the . . . breaching party committed a material breach, however, that party cannot enforce the contract. A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract."

Id. (quoting Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d 200, 203-04 (1997)). "Substantial compliance is the inverse of the proposition that a breach of the contract must be 'material' or significant before it will excuse non-performance." Id. at 214, 767 S.E.2d at 240.

> We addressed substantial compliance in the context of [P]rovider [A]greements in Psychiatric Solutions. In that case, we held that "contract principles applied to the interpretation of the provider agreement and that, under settled principles of contract law, appellant would be entitled to payment if its noncompliance did not amount to a material breach of the agreement." Psychiatric Solutions of Va., Inc. [v. Finnerty], 54 Va. App. [173,] 176, 676 S.E.2d [358,] 359-60 [(2009)]. We concluded that the provider did not substantially comply because, on those facts, its documentation deficiencies were material. Id. at 190-91, 676 S.E.2d at 367. We rejected the argument that the failures to document represented a "'trifling' technical deficiency in the documentation of those sessions." See id. at 191-92, 676 S.E.2d at 367. Instead, as a factual matter, DMAS established that the documentation failure "significantly impacted" the ability to provide care and, therefore, was a material breach. See id. at 192, 676 S.E.2d at 367-68.
>
> We were called upon to revisit the issue of substantial compliance in 1st Stop Health Services, Inc. [v. Department of Medical Assistance Services]. We again concluded that the provider's documentation failures were material. 63 Va. App. at 270, 756 S.E.2d at 185. The provider's documentation in that case was "'abysmal' to the point [that] the auditor [could not] determine that certain payments were justified." Id. at 280, 756 S.E.2d at 190. We also pointed to the language of the Provider Agreement and the applicable DMAS Manual to hold that the retraction of payment was a plainly authorized remedy for the provider's failure to maintain the required documentation. Id. at 281, 756 S.E.2d at 191.

Culpeper Reg'l Hosp., 64 Va. App. at 214, 767 S.E.2d at 240. We further noted in 1st Stop that "any paid provider claim that cannot be verified *at the time of review* cannot be considered a valid claim for services provided." 1st Stop, 63 Va. App. at 278-79, 756 S.E.2d at 189-90 (emphasis in original) (quoting EDCD Manual, Chapter 6, p. 12-13). The documentation requirements are obligations that are an indispensable part of the agreement between providers and DMAS.

In this case, as stated above, we find that the language of the agreement controls. The Agreement requires the hospital to follow the provisions of the Manual. The Manual explicitly requires providers "to refund payments made by Medicaid if they are found to have . . . failed to maintain any record or adequate documentation to support their claims." Hosp. Manual, Chapter VI, p. 2. St. Mary's was required to "certify for each applicant or beneficiary that inpatient services in a hospital are or were needed," and "recertify for each applicant or beneficiary that inpatient services in a hospital are needed . . . at least every 60 days after certification." 42 C.F.R. § 456.60(a)-(b). St. Mary's failed to make these required certifications and recertification in a manner that complied with the Manual. Therefore, DMAS could enforce the terms of the Agreement and require repayment for patients that were admitted without the required certification and retained without the required recertification. Accordingly, the circuit court did not err in affirming the FAD requiring St. Mary's to refund payments.

## D. DUE PROCESS

St. Mary's claims that by imposing a requirement that was not only not clearly stated in the relevant Manual provisions or regulations, but that was altogether completely absent from the regulations and Manual, the Director denied St. Mary's rights to due process. More specifically, St. Mary's claims that "DMAS has unabashedly imposed requirements involving specific form, specific procedure, and specific language that cannot be found anywhere in any statute,

regulation, Manual provision, or other written guidance document." We find no merit in this argument.

Due process requires that a statute "be sufficiently precise and definite to give fair warning to those who are subject to it what the statute prohibits and what is expected of them by the state." Volkswagen of America, Inc. v. Smit, 279 Va. 327, 337, 689 S.E.2d 679, 685 (2010). The Virginia Supreme Court has extended this holding to ordinances and regulations as well, noting that "[a] statute, ordinance, or regulation which delegates discretionary authority to an administrative officer to determine its application does not satisfy due process if it lacks standards which are sufficiently clear to guide the officer, and inform those subject to his jurisdiction, of how that discretion is to be exercised." Id. at 339, 689 S.E.2d at 686.

In this case, the statutes, ordinances, and regulations were sufficiently clear. St. Mary's constructed its forms which, if completed properly, would contain the necessary elements for compliance. Therefore, St. Mary's cannot claim that it was "blindsided" by the requirements contained in the regulations or Manual.

### E. CONCLUSION

In summary, we find that the circuit court did not err in affirming the DMAS Director's FAD as to JD, LD, GW, MWC, SAN, and KSC as to initial certifications and as to all recipients at issue as to recertifications. However, we find that the circuit court erred in affirming the DMAS Director's FAD as to MHG, GMG, and BLH. Accordingly, we find that the circuit court did not err in affirming the Director's decision requiring St. Mary's to refund payments except those applicable to the initial certifications for MHG, GMG, and BLH. Finally, we find no merit in St. Mary's due process argument.

Affimed in part;
reversed and remanded in part.

- 12 -