COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Decker, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


MORRISON COMPREHENSIVE LEARNING
  CENTER, LLC
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1518-15-1                   JUDGE MARLA GRAFF DECKER
                                                         APRIL 12, 2016
VIRGINIA DEPARTMENT OF MEDICAL
  ASSISTANCE SERVICES

                FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                        Walter W. Stout, III, Judge Designate

                Paul R. Schmidt (Poole Brooke Plumlee P.C., on briefs), for
                appellant.

                Abrar Azamuddin, Assistant Attorney General (Mark R. Herring,
                Attorney General; Cynthia V. Bailey, Deputy Attorney General; Kim
                F. Piner, Senior Assistant Attorney General, on brief), for appellee.


        Morrison Comprehensive Learning Center appeals the decision of the circuit court

affirming the determination of the Department of Medical Assistance Services (DMAS) that it

was overpaid for services provided to Medicaid patients.  The agency retroactively rejected

charges and demanded that the appellant make repayment.  The appellant contends that DMAS

was not entitled to certain retroactive payments, arguing that neither the agreement between the

parties nor the relevant law allowed the agency to demand reimbursement of payments based on

those particular breaches of the agreement.  The appellant also appeals the trial court's denial of

its request for attorney's fees and costs.  For the reasons that follow, we affirm the trial court.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

DMAS is the state agency responsible for the administration of the Medicaid Program.
See Psychiatric Sols. of Va., Inc. v. Finnerty, 54 Va. App. 173, 176, 676 S.E.2d 358, 360 (2009).
Both the state and federal governments fund the program, which provides medical assistance to
eligible citizens of the Commonwealth.  Fralin v. Kozlowski, 18 Va. App. 697, 699, 447 S.E.2d
238, 239-40 (1994).  The director of DMAS is required to administer the plan and "expend
federal funds" in accordance with federal and state laws.  Code § 32.1-325(D)(1).  DMAS
contracts with health care establishments to provide needed services.  Code § 32.1-325(D)(2).

The appellant signed an agreement with DMAS to be a service provider for the program.
The agreement between the parties obligated the appellant to "comply with all applicable state
and federal laws, as well as administrative policies and procedures of DMAS."  The written
agreement provided that "[s]hould an audit by authorized state or federal officials result in
disallowance of amounts previously paid to the provider by DMAS, the provider shall reimburse
DMAS upon demand."

In 2012, a contractor acting on behalf of DMAS audited the appellant's records for the
period from January 1, 2010, through March 31, 2011.  In the course of the audit, numerous
problems were identified.  Auditors assigned an error code to each transaction that they
identified as invalid.  The errors on which DMAS based the retracted payments can be divided
into three categories:  inadequate documentation of services provided, failure to satisfactorily
reevaluate plans of care, and untimely employee background checks.  In total, the agency
determined that the appellant was required to repay $164,655.89.

The appellant disagreed with DMAS's determination and filed an appeal with the agency
appeals division. Following an informal fact-finding conference, the agency upheld the
overpayment determination.

The appellant again appealed, and a hearing officer conducted the *de novo* hearing that followed. The hearing officer ultimately recommended that the overpayment determination be partially upheld and partially overturned.

DMAS made its final agency decision after considering the recommendations of the hearing officer. The agency upheld the entire overpayment determination.

The appellant pursued an additional appeal in the circuit court. The court affirmed the agency decision and denied the appellant's request for attorney's fees and costs. In rendering the decision, the court found that the facts supported the agency's decision, the decision was not arbitrary and capricious, and the language of the agreement between the parties controlled.

## II. ANALYSIS

The appellant challenges the circuit court's affirmance of the agency's retraction of payments. The appellant's first three assignments of error stem from a single argument: that the contract principle of material breach should apply to its agreement with DMAS. It also contends that the circuit court erred by denying its request for attorney's fees and costs. DMAS counters that the contract requires strict compliance with all state laws, federal laws, and DMAS policies and procedures.

"The Virginia Administrative Process Act authorizes judicial review of agency decisions." DMAS v. Patient Transp. Sys., Inc., 58 Va. App. 328, 332, 709 S.E.2d 188, 190 (2011) (quoting Avante at Roanoke v. Finnerty, 56 Va. App. 190, 197, 692 S.E.2d 277, 280 (2010)). On appeal of an agency decision to a circuit court, that court acts in a manner that "is equivalent to an appellate court's role in an appeal from a trial court." LifeCare Med. Transps., Inc. v. DMAS, 63 Va. App. 538, 548, 759 S.E.2d 35, 40 (2014) (quoting Sch. Bd. of Cty. of York v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991)).

The "party complaining of agency action" bears the burden of "demonstrat[ing] an error of law." Code § 2.2-4027. Judicial review of an agency decision "is limited to determining (1) [w]hether the agency acted in accordance with law; (2) [w]hether the agency made a procedural error which was not harmless error; and (3) [w]hether the agency had sufficient evidential support for its findings of fact." Patient Transp. Sys., 58 Va. App. at 333, 709 S.E.2d at 190 (alterations in original) (quoting Avante, 56 Va. App. at 197, 692 S.E.2d at 280).

The standard of review for issues of law in the administrative context is well established.

> "If the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law," the court need not defer to the agency's interpretation. "However, where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion."

Psychiatric Sols., 54 Va. App. at 185, 676 S.E.2d at 364 (alterations in original) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243-44, 369 S.E.2d 1, 8 (1988)). In addition, "the [reviewing] court shall take due account of the presumption of official regularity." Code § 2.2-4027. See generally United States v. Armstrong, 517 U.S. 456, 464 (1996) (explaining that under the "presumption of regularity" doctrine, courts presume that public officials "have properly discharged their official duties" (quoting United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926))).

Contract principles apply to the agreement between the parties. Culpeper Reg'l Hosp. v. Jones, 64 Va. App. 207, 213, 767 S.E.2d 236, 239 (2015). "[A] number of default rules . . . govern contract interpretation." Id. However, a specific default rule applies to a particular contract only if the parties did not agree, through the contract, to displace the rule. See id.

The appellant invokes the contract principle of "material breach," arguing that because the breaches were minor, DMAS could not retract the payments. Under this principle, a party in breach of a contract "is not entitled to enforce the contract," unless the breach involves only "a minor part of the consideration." Id. (quoting Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997)); see also Countryside Orthopaedics, P.C. v. Peyton, 261 Va. 142, 154, 541 S.E.2d 279, 285-86 (2001) (concluding that the appellee's breach was material and therefore he could not enforce the contract). In other words, a breaching party is prevented from enforcing a contract if the breach is "material," that is, "something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." 1st Stop Health Servs. v. Dep't of Med. Assistance Servs., 63 Va. App. 266, 279, 756 S.E.2d 183, 190 (2014) (quoting Psychiatric Sols., 54 Va. App. at 190, 676 S.E.2d at 367). "Substantial compliance is the inverse of the proposition that a breach of the contract must be 'material' or significant before it will excuse non-performance." Culpeper, 64 Va. App. at 214, 767 S.E.2d at 240; see Psychiatric Sols., 54 Va. App. at 190 n.5, 676 S.E.2d at 367 n.5. As with other default contract rules, parties to a contract "may agree to displace" the principle of material breach. See Culpeper, 64 Va. App. at 213, 767 S.E.2d at 239.

The contract at issue here stated, in pertinent part, that "[t]he provider agrees to comply with all applicable state and federal laws, as well as administrative policies and procedures of DMAS." App. at 153. This reference to state laws, federal laws, DMAS policies, and DMAS procedures incorporated them into the agreement.[1] See, e.g., Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 571, 709 S.E.2d 163, 169 (2011) (construing the homeowners' association bylaws as part of the contract based on the agreement's reference to them). The agreement to abide by "all DMAS policies and procedures"

---

[1] This opinion references laws, regulations, and DMAS policies in effect during the relevant time period of the disputed services provided by the appellant.

encompassed the DMAS manual containing its guidelines for how to comply with the applicable regulations. Psychiatric Sols., 54 Va. App. at 187, 676 S.E.2d at 365. The DMAS manual requires providers "to refund payments made by Medicaid if they are found to have billed Medicaid contrary to law or regulation, failed to maintain any record or adequate documentation to support their claims, or billed for medically unnecessary services." DMAS, Elderly or Disabled with Consumer Direction Waiver Services Provider Manual, ch. VI, at 1 (Jan. 11, 2008) [hereinafter EDCD Manual].

The appellant does not contest the factual underpinnings of the breaches of contract outlined by each error code or that the error codes correctly identify its contractual and legal obligations. Rather, the appellant argues that the contract principle of material breach must apply. Consequently, resolution of this case turns on whether the parties agreed to displace that basic contract principle and instead require strict compliance with respect to each category of the appellant's breaches of contract.

### A. Inadequate Documentation

The appellant challenges the retraction of payments for errors under codes 900, 903, 904, 916, 918, and 919, which pertain to documentation requirements for services provided. The appellant believes that these breaches were not material and thus did not provide bases for DMAS to retract payments.

The appellant does not contest that the error codes pertaining to records documentation identified contractual obligations or that it failed to meet them. Error code 900 disallowed services for which "medical record[s] did not contain the required written documentation" that the registered nurse "made a supervisory visit" every thirty to ninety days for the dates of services billed. Error code 903 pertains to services that were not adequately documented with a timely signature on the aide record pursuant to the Virginia Administrative Code. Error code

904 categorizes services that were not properly documented with the time in or out on the aide record. Error code 916 addresses payments that were disallowed due to after-the-fact alterations in records reflecting the time, date, and services provided. Error code 918 pertained to services that were documented with "inconsistent signature[s]" on the aide records. Finally, code 919 signifies services disqualified due to the alteration of records in a manner not in compliance with DMAS policy for correcting records. See 12 VAC 30-120-180 (2010) (repealed 2013); 12 VAC 30-120-233 (2010) (repealed 2013); 12 VAC 30-120-766 (2010) (amended 2014); 12 VAC 30-120-950 (2010) (repealed 2015); 12 VAC 30-120-960 (2010) (repealed 2013); EDCD Manual, ch. IV, at 24, 31, 36 (Apr. 3, 2008); EDCD Manual, ch. VI, at 7 (Jan. 11, 2008).

The hearing officer recommended upholding the retractions for these error codes. DMAS adopted this recommendation, stating that violations of its regulations incur strict liability triggering full repayments.

The DMAS manual requires providers "to refund payments made by Medicaid if they are found to have . . . failed to maintain any record or adequate documentation to support their claims." EDCD Manual, ch. VI, at 1. Therefore, DMAS may enforce the terms of the contract and require repayment for services later found to be inadequately documented. Accordingly, the circuit court did not err in affirming the agency decision requiring the appellant to refund these payments.

We note that the appellant misconstrues the holding in Culpeper by arguing that the Court essentially engaged in a substantial compliance analysis by determining that the service provider in that case had "frustrated the very purpose of the contract." This portion of Culpeper, instead of applying a material breach analysis as the appellant contends, considered whether the service provider had breached the agreement at all. Once this Court decided that the service provider in that case had breached the agreement by failing to certify the need for inpatient care, it

concluded that the remedy for the breach was controlled by the provision in the parties' agreement that a provider must refund Medicaid payments if the claim was not adequately documented. Culpeper, 64 Va. App. at 215, 767 S.E.2d at 240. Under the terms of the agreement, DMAS was entitled to demand repayment for the inadequately documented services. Id. Therefore, under Culpeper, the appellant's failure to follow the documentation requirements set forth in the DMAS manuals and the Virginia Administrative Code constituted a basis under the parties' agreement for DMAS to retract those payments due to the insufficient documentation of services.[2]

## *B. Plan of Care*

The appellant suggests that the agency's decision to retract payments under error code 917 was not supported by evidence that the appellant's failure to follow agency procedure caused DMAS any harm.

Error code 917 categorizes services with an insufficiently documented or undocumented "Plan of Care form." App. at 146. The audit report explained that the provider is supposed to complete this form before providing care to a Medicaid recipient as well as annually, or "document on the current Plan of Care . . . annually that the Plan of Care was reviewed and no changes are necessary." App. at 146.

---

[2] The appellant also contends that Psychiatric Solutions mandates "the application of ordinary contract principles," including that of material breach. In Psychiatric Solutions, the service provider failed to document its services in compliance with DMAS manual requirements. Psychiatric Sols., 54 Va. App. at 186, 676 S.E.2d at 364. This Court affirmed the payment retractions, holding that the provider's documentation method constituted a material breach of contract. Id. at 191, 676 S.E.2d at 367. The Court did not consider whether the contract displaced the principle of material breach. We decline to interpret this Court's omission of a discussion of the issue as a holding that the agreement could not specifically displace the general contract rule. Further, the appellant's interpretation of Psychiatric Solutions suggests that this Court in Culpeper disregarded the holding in the earlier opinion, contrary to the interpanel accord doctrine. See, e.g., Gilbane v. Guzman, 59 Va. App. 128, 136, 717 S.E.2d 433, 437 (2011) (noting that under the doctrine, a panel of this Court is bound by other panel decisions of the Court). We reject this contention.

For one patient, the appellant prepared a plan of care dated May 29, 2009. The date of the next plan of care for that patient in the record is December 17, 2010. The appellant contends that it conducted a level-of-care review on December 23, 2009, and at that time relied on its earlier plan of care for the period between December 23, 2009, and December 17, 2010. The appellant did not contest that it failed to document on the plan of care form itself that no changes were needed. The hearing officer recommended upholding the retraction of the payment under this error code. The agency accepted the hearing officer's conclusion.

The appellant challenges the retraction of the payment under error code 917 because "DMAS failed to enunciate a harm." This argument, as in the appellant's first assignment of error, relies on the contract principle of material breach.

A provider organization must create a plan of care for each individual before providing personal care and respite care services. EDCD Manual, ch. IV, at 8. A plan of care is a "written plan by the provider solely to the specific services required by the individual." 12 VAC 30-120-900 (2010) (amended 2015). The provider is required to either complete a new plan of care annually or document on the existing form that the plan was reviewed and no changes were necessary. EDCD Manual, ch. IV, at 26. Medicaid "[p]ayment is available only for allowable activities . . . in accordance with an approved Plan of Care." Id. at 16. DMAS requires service providers to maintain records of plans of care for patients for the review process. Id. at ch. VI, at 6, 9.

The DMAS manual requires providers "to refund payments made by Medicaid if they are found to have billed Medicaid contrary to law or regulation, failed to maintain any record or adequate documentation to support their claims, or billed for medically unnecessary services." EDCD Manual, ch. VI, at 1. Under agency policy, regulations, and the agreement between the parties, the appellant was required to complete and update plans of care for recipients, and the

agency could pay only for services provided in accordance with plans of care. In light of the appellant's failure to update the plan of care as mandated, DMAS was permitted to enforce the terms of the agreement and require repayment for services later found to be based on an invalid plan of care. Accordingly, the circuit court did not err in affirming the agency decision requiring the appellant to refund these payments.

### C. Background Checks

The appellant contends that the agency arbitrarily and capriciously retracted payments under error codes 911 and 922 in violation of the plain language of the applicable regulations. These error codes pertain to the requirements that a provider perform criminal background checks and verify personal references of prospective employees. Specifically, code 911 denotes services disallowed because they were provided by an aide before the appropriate criminal background check was obtained. Error code 922 signifies services disallowed because they were provided by an untrained aide or under the supervision of a registered nurse who was without training, a background check, or documentation of prior experience. The appellant claims that it was error to allow retraction of these payments where a subsequent check of the employee's criminal history showed that he or she had "not committed a barrier crime."

The hearing officer concluded that "the remedy of retraction of payment [which was] provided for" under the pertinent regulation was limited to circumstances when an aide actually had "committed a barrier crime." Consequently, the hearing officer recommended reversing the retractions on these error codes. The agency held that the hearing officer erred on this issue. It concluded that the retraction of payments was justified under its provision placing the provider on notice that non-compliance with agency policies and procedure "may result" in such retraction of payment. See 12 VAC 30-120-930(A)(18) (2010) (amended 2015).

- 10 -

The relevant regulation regarding criminal record checks for employees requires that:

> The criminal record check shall be available for review by DMAS staff who are authorized by the agency to review these files. *DMAS will not reimburse the provider for any services provided by an employee who has committed a barrier crime* as defined herein. *Providers are responsible for complying with § 32.1-162.9:1 of the Code of Virginia regarding criminal record checks.*

12 VAC 30-120-930(A)(18) (2010) (emphases added) (amended 2015). Code § 32.1-162.9:1 states that home care organizations "shall, within 30 days of employment, obtain for any compensated employees an original criminal record clearance with respect to convictions for offenses specified in this section or an original criminal history record from the Central Criminal Records Exchange." Code § 32.1-162.9:1(A) (2010) (amended 2014).

Accordingly, under the relevant statute and regulation, the appellant was required to obtain background checks for its employees within thirty days of hiring. The DMAS manual makes clear that providers must document criminal record checks performed in compliance with Code § 32.1-162.9:1 and provide that documentation to agency staff upon request. EDCD Manual, ch. II, at 13, 14-15 (Jan. 11, 2008).

In addition, DMAS policy requires that a registered nurse employed by participating providers "must have a satisfactory work history as evidenced by two . . . satisfactory reference checks from prior job experience." Id. at 16. As with criminal record checks, providers must maintain records of work references for review by DMAS staff. Id. at 17.

In ordering retraction of payments for failure to complete the required background checks, the agency relied on the regulation stating that "[a] provider's noncompliance with DMAS policies and procedures may result in a retraction of Medicaid payment." See 12 VAC 30-120-930(A)(17) (2010) (amended 2015). The agency appears to have interpreted the word "may" as used in this provision as allowing it the discretion to retract any payment associated with any violation of its policies or procedures. On appeal, DMAS interprets this regulation as

putting the appellant "on notice . . . that failure to comply *will* result in the retraction of Medicaid payments." (Emphasis added).

An agency's interpretation of its own regulation is controlling "unless it is plainly erroneous or inconsistent with the regulation." See, e.g., Mathews v. PHH Mortg. Corp., 283 Va. 723, 738, 724 S.E.2d 196, 203 (2012) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). "However, '[i]f the regulation is unambiguous, . . . the regulation's plain language, not the agency's interpretation, controls.'" Id. at 738, 724 S.E.2d at 204 (alteration in original) (quoting United States v. Deaton, 332 F.3d 698, 709 (4th Cir. 2003)). Where the regulation and manual do not provide a specific meaning for particular language, we may consider its "plain meaning." See Culpeper, 64 Va. App. at 212, 767 S.E.2d at 239 (discussing the dictionary definition of "certification").

"May" is defined, in pertinent part, as "hav[ing] the ability or competence to," "hav[ing] permission to," "be[ing] in some degree likely to," and "shall, must." May, Webster's Third New International Dictionary (3d ed. 1993) (explaining that the "shall, must" definition especially applies in legal contexts such as "deeds, contracts, and statutes"); see also Ross v. Craw, 231 Va. 206, 211, 343 S.E.2d 312, 316 (1986) (noting that in interpreting a will, contract, or statute, courts "will construe 'may' and 'shall' as permissive or mandatory in accordance with the subject matter and context" (quoting Pettus v. Hendricks, 113 Va. 326, 330, 74 S.E. 191, 193 (1912))). Under the dictionary definition of "may," the agency's interpretation of 12 VAC 30-120-930(A)(18) as allowing it the discretion to retract any payment associated with a violation of its policies or procedures is not plainly wrong. Consequently, that interpretation is controlling here, and DMAS could enforce the terms of the contract and require repayment for services later found to be provided by inadequately screened employees. See Mathews, 283 Va.

at 738, 724 S.E.2d at 203. Accordingly, the circuit court did not err in affirming the agency decision requiring the appellant to refund these payments.[3]

### D. Attorney's Fees and Costs

The appellant contends that the circuit court erred in denying its request for attorney's fees and costs. Under Code § 2.2-4030, when a party contests an agency action, that party may recover "reasonable costs and attorneys' fees" from the agency if the party "substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust." An agency's position is "substantially justified" if that position is "not unreasonable." See Hollowell v. Va. Marine Res. Comm'n, 56 Va. App. 70, 87, 691 S.E.2d 500, 509 (2010) (quoting Jones v. West, 46 Va. App. 309, 333-34, 616 S.E.2d 790, 803 (2005)). This Court reviews the circuit court's application of Code § 2.2-4030 *de novo*. See id. at 83, 691 S.E.2d at 507 (noting, however, that the "actual amount of an award of fees" is a matter falling within the circuit court's broad discretion). The agency's position here was "substantially justified" and indeed prevails on appeal. Consequently, we affirm the circuit court's denial of attorney's fees and costs.

### III. CONCLUSION

The agreement signed by the appellant requires the provider to follow DMAS policy and procedure, which in turn unambiguously requires providers "to refund payments made by Medicaid if they are found to have billed Medicaid contrary to law or regulation [or] failed to

---

[3] We reject the appellant's argument that the specific language of subsection (A)(18) stating that providers "will not" be reimbursed for services performed by an employee who has committed a barrier crime mandates a different outcome. Mandatory retraction of payments when an employee has committed a barrier crime does not exclude the agency from having the discretion to retract payments where other policies have not been followed. Indeed, adoption of the appellant's position would render superfluous subsection (A)(17)'s provision that non-compliance with DMAS policies and procedures "may" result in a retraction of payments. See Kirby v. Commonwealth, 63 Va. App. 665, 670-71, 762 S.E.2d 414, 416 (2014) (explaining that separate parts of a statute should be construed together).

- 13 -

maintain any record or adequate documentation to support their claims." Thus, DMAS was entitled to retroactive payments due to the appellant's failures to adequately document services. In addition, the agency was permitted to retract payments from the appellant for services that were not based on a plan of care updated in compliance with the agreement. Further, the agency acted within its discretion in interpreting its regulation, which was also incorporated into the agreement, as allowing it to retract the payments made for services provided by employees before the necessary background checks were obtained.[4] Finally, the trial court's denial of the appellant's request for attorney's fees and costs was appropriate because the agency action was substantially justified. For these reasons, we affirm the circuit court's decision.

Affirmed.

---

[4] We recognize this decision "may come across as harsh and formalistic." Culpeper, 64 Va. App. at 215, 767 S.E.2d at 240. However, this Court's function is "to construe the contract made by the parties, not . . . to alter the contract they have made so as to conform it to the court's notion of the contract they should have made." Id. (alteration in original) (quoting Ames v. Am. Nat'l Bank of Portsmouth, 163 Va. 1, 38, 176 S.E. 204, 216 (1934)).