PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Alston and Senior Judge Bumgardner
Argued at Alexandria, Virginia

SUSAN L. FRENCH

v.    Record No. 0498-14-4

OPINION BY
JUDGE D. ARTHUR KELSEY
JANUARY 20, 2015

VIRGINIA MARINE RESOURCES COMMISSION

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Clifford L. Athey, Jr., Judge

Richard M. Cornelius for appellant.

Matthew L. Gooch, Assistant Attorney General (Mark R.
Herring, Attorney General; Lynne C. Rhode, Senior
Assistant Attorney General; Paul Kugelman, Jr., Senior
Assistant Attorney General, on brief), for appellee.


The Virginia Marine Resources Commission (VMRC) granted an after-the-fact permit to a landowner to build an access bridge across a shallow mountain creek. Susan L. French, a neighbor of the permitee, unsuccessfully contested the issuance of the permit during the administrative process and on appeal to the circuit court. French now appeals to us, claiming that the VMRC violated her procedural due process rights and failed to exercise properly its discretion in issuing the permit. We disagree and affirm.

I.

This case comes to us, as it did to the circuit court, pursuant to judicial review provisions of the Virginia Administrative Process Act (VAPA), Code §§ 2.2-4025 to -4030. We thus review "the facts in the light most favorable to sustaining the agency's action." Comm'r, Va. Dep't of Soc. Servs. v. Fulton, 55 Va. App. 69, 79, 683 S.E.2d 837, 841-42 (2009) (internal quotation marks and alteration omitted); see also Mattaponi Indian Tribe v. Dep't of Envtl. Quality, 43 Va. App. 690, 713, 601 S.E.2d 667, 679 (2004), aff'd in relevant part sub nom. Alliance to Save the Mattaponi v. Dep't of Envtl. Quality, 270 Va. 423, 621 S.E.2d 78 (2005).

This case involves a dispute between two neighbors in Frederick County. In 2011, Donald Foor bought property abutting Hogue Creek. As part of the purchase agreement, the seller constructed a bridge across the creek so that Foor could access the property through a private right of way connecting the property to a public road. The "low water bridge" is little more than concrete slab over corrugated steel drainage pipes. App. at 374, 417. The creek typically is "only a few inches deep" and thus, the bridge does not implicate "any navigation issues." Id. at 486.

The seller built the bridge believing that he did not need a VMRC permit. He did so because he had applied for a permit to construct a similar bridge across Hogue Creek in 2003 and had been "notified from VMRC that a permit was not required"[1] because VMRC typically did not "exert jurisdiction on non-tidal streams where the drainage area upstream of the impact area is less than five square miles, which was what was thought to be in this situation." Id. at 485 (background summary by VMRC staffer); see also id. at 492.

French, one of Foor's neighbors, became aware of the bridge and notified the VMRC of her objections to it. Reconsidering their earlier position, VMRC staff concluded that "the drainage area upstream of the bridge location was greater than five square miles," id. at 485, and advised Foor to apply for an after-the-fact permit. During the administrative process, VMRC staff received from French detailed written objections to the application.

In response to her environmental concerns, VMRC staff contacted the Virginia Department of Game and Inland Fisheries and the Virginia Department of Conservation and Recreation. These agencies "did not see any major environmental impact upon protected species

---

[1] The agency record contains a letter, dated January 25, 2005, from the VMRC to Foor's predecessor in interest. The letter, regarding the permit application that had been submitted in 2003, stated that the "proposed project is in an area [Hogue Creek] over which the Marine Resources Commission is not currently exerting jurisdiction. Therefore, no authorization will be required from this agency." App. at 531.

and other resources in the area." Id. Addressing French's worries about the possibility that "the bridge would exacerbate flooding conditions upon her property," VMRC staff reviewed a flood plain study for the area and "determined that a 100-year flood event would not raise flood levels significantly on the upstream areas of the bridge." Id. French also suggested that the bridge might interfere with the possibility that she would build a "low water bridge" across the creek to her property sometime in the future. Id. at 486. VMRC staff concluded that the presence of Foor's bridge "would not necessarily affect [French's] application" for her own bridge. Id.

VMRC staff presented their findings to the full commission at a public hearing. The written recommendation concluded:

> Staff understands the need for the applicant to have access to his property and feels that a low water bridge crossing is an appropriate structure to provide such access. Staff also understands the confusion created by a previous inaccurate determination that a similar project did not require permits from VMRC. In light of this error, staff feels that the assessment of any civil charges or additional fees would be inappropriate.
>
> Accordingly, after evaluating the merits of the project, and after considering all of the factors contained in §28.2-1205(A) of the Code of Virginia, staff recommends approval of the project without any civil charges or additional permit fees.

Id. at 517 ("Habitat Management Division Evaluation").

French appeared at the VMRC hearing to voice her objections to the proposed permit. In her opening remarks, she informed the VMRC that Hogue Creek "may be a small stream," but "it's sort of my stream, and it matters to me." Id. at 486. The first thing that mattered to her, French asserted, was that "the lawful right of way across Hogue Creek was not where this bridge was constructed." Id.; see also id. at 503. The properly located right of way, she alleged, was in a location "shared" by her. Id. at 487; see also Oral Argument Audio at 18:00-18:15. She went on to assert, among other things, that the public did not benefit from the bridge, the bridge adversely affected the environment, the "concrete bunker in the middle of the stream" unfairly

"increases" the value of Foor's land, id. at 489, and the bridge might negatively affect her future ability to construct a bridge across the creek to access her mountain property, id. at 490-91.

An engineer hired by Foor testified at the VMRC hearing. His firm conducted a flood plain study, designed the drain field for the bridge, and produced information required by the VMRC staff. He pointed out that, without the bridge, the landowners would be fording the creek with vehicular traffic creating "disturbance from an environmental standpoint." Id. at 491. The bridge ameliorated this concern by connecting the dirt and gravel right of way, which was "the only means of ingress and egress" to Foor's landlocked parcel. Id. The bridge thus benefitted the public, he testified, because the landowners "don't have to [ford] the creek any more" — thus reducing "pollutants in the water" inevitably left by vehicular traffic. Id. at 492. He added that French misunderstood the risk of flooding and explained that the bridge "has no impact [on] the flood zone whatsoever." Id.

After reviewing the staff's recommendation and the evidence received during the public meeting, the VMRC issued the permit. In a letter to French, the VMRC explained:

> The Commission reviewed slides of the proposal, all documents in the official record and carefully considered the supporting testimony [Foor's engineer] presented, as well as your opposing testimony and exhibits. After careful deliberation and after considering all of the factors contained in § 28.2-1205 of the Code of Virginia, the Commission voted five to three [to] approve the project as presented.

Id. at 343. French appealed to the circuit court pursuant to Code § 28.2-219, VAPA's judicial review provision. The circuit court affirmed the VMRC decision, and French appealed to us.

II.

On appeal, French claims that the VMRC decision violated her procedural due process rights and that the VMRC acted arbitrarily in granting the after-the-fact permit. The circuit court rejected these arguments, as do we.

- 4 -

French argues on appeal that she has "constitutionally protected property rights as an adjacent riparian landowner" and that VMRC's "sham" public hearing, resulting in the issuance of Foor's permit, violated these rights. Appellant's Br. at 28-29.[2] We find fault with the assumptions underlying this argument.

"The democratic process presumes a constant interchange of voices." Nev. Comm'n on Ethics v. Carrigan, 131 S. Ct. 2343, 2352 (2011) (Kennedy, J., concurring). If a governmental body conducts a public hearing and invites the participation of those in attendance, participants may offer their opinions if they are germane to the subject and presented in an orderly manner. See, e.g., Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983) (approving "time, place, and manner regulations" if reasonable and viewpoint neutral); Steinburg v. Chesterfield Cnty. Planning Comm'n, 527 F.3d 377, 380 (4th Cir. 2008).

We would not, however, characterize the general right to be heard in a participatory democracy as a constitutional attribute of procedural due process principles. "The point of due process is to ensure that the government does not deprive anyone of 'life, liberty, or property' arbitrarily and capriciously — that is, 'without due process of law.'" Va. Dep't of Alcoholic Bev. Control v. Tyson, 63 Va. App. 417, 426, 758 S.E.2d 89, 93 (2014) (quoting U.S. Const. amend. XIV, § 1). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process."

---

[2] We question whether French preserved this issue during the administrative process. See Appellee's Br. at 13. Principles of procedural default, analogous to those governed by Rule 5A:18, apply to agency decisions judicially challenged on appeal. See Doe v. Va. Bd. of Dentistry, 52 Va. App. 166, 176, 662 S.E.2d 99, 104 (2008) (*en banc*); Pence Holdings, Inc. v. Auto Ctr., Inc., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995). Given our view that French's assertions lack merit, we find it unnecessary to dissect the agency record to determine whether French's due process assertions, if valid, were waived.

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999); see also McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995). This principle applies to administrative agency hearings no less than it does to any other governmental proceeding. See Richard J. Pierce, Jr., II Administrative Law Treatise § 9.4, at 578 (4th ed. 2002).[3]

French does not claim that the permit deprived her of life or personal liberty. Instead, she claims that the VMRC — merely by issuing the after-the-fact permit to Foor — deprived her of "real property rights" and, in particular, her common-law "riparian" rights. Appellant's Br. at 7, 28, 39-40. We need not determine the scope of French's riparian rights, if any, implicated by Foor's bridge, because the VMRC permit did not (and, as a matter of law, could not) deprive French of any cognizable property rights. The *bridge* may or may not affect such rights, but the *permit* does not.

This seemingly subtle distinction is intrinsic to the very structure of the Constitution. With a few notable exceptions, the Constitution restrains only state action — not the actions of private individuals. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991); Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). It necessarily follows that procedural due process principles "apply *only if a government action* will constitute the impairment of some individual's life, liberty or property." Ronald D. Rotunda & John E. Nowak, 3 Constitutional Law: Substance and Procedure § 17.2, at 5 (5th ed. 2012) (emphasis added)).

In this case, the VMRC issued the permit but did not build the bridge. Thus, the only question is whether the issuance of the permit, by itself, has the legal effect of depriving French

---

[3] The deprivation "in itself" is not the constitutional violation, but "what is unconstitutional is the deprivation of such an interest without due process of law." Norfolk 102, LLC v. City of Norfolk, 285 Va. 340, 357, 738 S.E.2d 895, 904 (2013) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)). Given our holding, we need to determine if the VMRC's process for hearing objections to proposed permits violates the minimal requirements of procedural due process.

of any property rights. As a matter of law, the answer must be "no." Regulatory permits generally do "not affect property rights or otherwise adjudicate their merits." Alliance to Save the Mattaponi, 270 Va. at 447, 621 S.E.2d at 91 (citing Zappulla v. Crown, 239 Va. 566, 571, 391 S.E.2d 65, 68 (1990)). "Such regulatory permits determine only the rights of an applicant with relation to the Commonwealth and the public." Id. at 447, 621 S.E.2d at 91-92. Absent specific statutory authority to do so, a permitting agency has "authority only to issue or to deny the permit," and that "decision does not and, by law, cannot affect private rights of action between competing litigants." Mattaponi Indian Tribe, 43 Va. App. at 708, 601 S.E.2d at 676.[4]

What is true generally of permitting agencies is also true of the VMRC. The General Assembly made this clear by providing that nothing in the VMRC's basic law "shall be construed to deprive a riparian landowner of such rights as he may have at common law." Code § 28.2-1205(F); accord Zappulla, 239 Va. at 569, 391 S.E.2d at 67 ("[T]he *sole* jurisdiction to resolve conflicting private riparian claims is vested in a court of equity." (emphasis added)).[5] In

---

[4] See, e.g., Code § 10.1-1446 ("Nothing in the certification [of waste management facilities] shall constitute a defense to liability in any civil action involving private rights."); Code § 45.1-246.1(F) ("Nothing in this section shall restrict any common-law or statutory right which any person . . . may have to seek enforcement of any of the provisions of this chapter and the regulations thereunder, or to seek any other relief, including relief against the Director [of the Department of Mines, Minerals and Energy]."); Code § 62.1-44.22 ("The fact that any owner holds or has held a certificate issued under [the State Water Control Law] shall not constitute a defense in any civil action involving private rights."); accord Appalachian Power Co. v. John Stewart Walker, Inc., 214 Va. 524, 533-34, 201 S.E.2d 758, 766 (1974) ("Nothing is better settled than that [the Virginia State Corporation] Commission does not have jurisdiction to adjudicate and determine private rights or private contracts between public service corporations and individuals." (internal quotation marks omitted)). Various administrative regulations similarly recognize this limitation. See, e.g., 9 Va. Admin. Code § 20-81-490(F); 9 Va. Admin. Code § 25-31-60(C); 9 Va. Admin. Code § 25-32-50(B).

[5] We acknowledge that the circuit court's remarks from the bench seemed to suggest otherwise. See App. at 339 ("As an aside, I do think that there is a property right here which was impacted."); id. at 340. Even if these remarks constituted a holding, however, the right-result-wrong-reason doctrine requires affirmance given that the issue here is a question of law. See generally Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010); Perry v.

- 7 -

short, because the VMRC permit has no legal effect on French's property rights, French cannot claim that the VMRC deprived her of any property rights in violation of due process principles.

This legal conclusion wholly disposes of French's constitutional challenge. We thus need not address the other grounds asserted by the VMRC and considered by the circuit court for rejecting this portion of French's argument. "As an appellate court, we seek 'the best and narrowest ground available' for our decision," Morris v. City of Va. Beach, 58 Va. App. 173, 180, 707 S.E.2d 479, 482 (2011) (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010)), and we "thus strive to resolve cases 'on what we conceive to be the determinative points,'" id. (quoting Justice Herbert B. Gregory, Shorter Judicial Opinions, 34 Va. L. Rev. 362, 365 (1948)).

## B. THE VAPA CHALLENGE TO THE VMRC PERMIT

Even though French has no property interest upon which to predicate her due process claim, that does not mean she has no standing to challenge the VMRC's permit as arbitrary and capricious. While the first issue involves the elements of a constitutional due process claim, the second involves a question of "aggrieved party" standing, Code § 28.2-1205(F), and the statutory guidelines applicable to the VMRC's discretionary power to issue permits, Code §28.2-1205(A).[6]

Under settled VAPA law, the circuit court reviews an agency's action in a manner "equivalent to an appellate court's role in an appeal from a trial court." Boone v. Harrison, 52

---

Commonwealth, 280 Va. 572, 579-80, 701 S.E.2d 431, 435-36 (2010); Reston Hospital Ctr., LLC v. Remley, 63 Va. App. 755, 771 n.9, 763 S.E.2d 238, 247 n.9 (2014).

[6] We assume *arguendo* that French has standing under Code § 28.2-1205(F). See generally Va. Marine Res. Comm'n v. Clark, 281 Va. 679, 687-88, 709 S.E.2d 150, 155 (2011) (upholding dismissal of a petition where petitioners had failed to establish the requisite injury, property right denial, or burden "different from that imposed on the public generally"); Bd. of Supervisors v. Bd. of Zoning Appeals, 268 Va. 441, 449-50, 604 S.E.2d 7, 11 (2004) (describing general requirements for "aggrieved" status). The VMRC conceded as much at oral argument on appeal. See Oral Argument Audio at 13:25-13:43.

Va. App. 53, 61, 660 S.E.2d 704, 708 (2008) (internal quotation marks omitted). "The circuit court has no authority under VAPA to reweigh the facts in the agency's evidentiary record. VAPA authorizes the court to reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Id. at 61-62, 660 S.E.2d at 708 (internal quotation marks omitted and emphasis in original). Consequently, no court can "substitute its own judgment for the agency's on matters committed by statute to the agency's discretion." Id. at 62, 660 S.E.2d at 708.

Instead, "when the appellant challenges a judgment call on a topic on which the agency has been entrusted with wide discretion by the General Assembly, we will overturn the decision only if it can be fairly characterized as arbitrary or capricious and thus a clear abuse of delegated discretion." Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (internal quotation marks omitted). "This standard recognizes the larger premise that, before any legal question can be answered, an *a priori* question must first be asked — who has the authority to decide. It is the one question that precedes all others." Boone, 52 Va. App. at 62, 660 S.E.2d at 708.

The General Assembly "has invested the VMRC with wide discretion in determining whether to issue permits for projects over state-owned subaqueous lands." Id. As we have explained:

> Relying on the "specialized competency of the VMRC" on such matters, Palmer v. Commonwealth Marine Res. Comm'n, 48 Va. App. 78, 86, 628 S.E.2d 84, 88 (2006), the legislature did not restrict the VMRC's judgment to any decisionmaking formula intended to dictate the outcome of each permitting decision. Instead, Code § 28.2-1204 instructs the VMRC to permit "reasonable uses" of state-owned bottomland. The VMRC "shall be guided in its deliberations," Code § 28.2-1205(A), by the Virginia Constitution's emphasis on the preservation of the environment, the public's access to public lands for recreation, and maintenance of all public resources "for the benefit, enjoyment, and general welfare of the people of the Commonwealth," Va. Const. Art. IX, § 1.

- 9 -

Code § 28.2-1205(A) also directs the VMRC to exercise its authority consistent with the "public trust doctrine as defined by the common law of the Commonwealth" and to consider an additional list of specific factors, including the effect of the project on "[a]djacent or nearby properties." See Palmer, 48 Va. App. at 87-88, 628 S.E.2d at 89. "The presence or absence of any given factor is not dispositive of whether a permit should be granted; further, not every factor is applicable in every case." Id. at 90, 628 S.E.2d at 90.

Id. at 62-63, 660 S.E.2d at 708-09.

Applying these principles, we cannot conclude that the VMRC abused its discretion in issuing the permit to Foor. The VMRC reviewed a detailed recommendation from its staff, received testimony from Foor's engineer, and considered French's testimony and exhibits. The agency record shows a need for the bridge to accommodate ingress and egress to a landlocked parcel of land. Virginia law disfavors property segmentation that results in inaccessible parcels of land and, in some cases, implies easements and other rights of way for this very reason.[7] The public at large, not just the landlocked landowner, has an interest in doing so.[8]

In addition, both the VMRC staff and the other agencies they consulted concluded that the bridge provided access without any appreciable damage to the environment.[9] Foor's

---

[7] See, e.g., Middleton v. Johnston, 221 Va. 797, 803, 273 S.E.2d 800, 803 (1981); Smith v. Va. Iron, Coal, & Coke Co., 143 Va. 159, 164, 129 S.E. 274, 276 (1925); Bond v. Willis, 84 Va. 796, 798, 6 S.E. 136, 138 (1888); see also 2 William Blackstone, Commentaries on the Laws of England *36 ("A right of way may also arise by act and operation of law: for, if a man grants me a piece of ground in the middle of his field, he at the same time tacitly and impliedly gives me a way to come to it. . . . For when the law doth give any thing to one, it giveth impliedly whatsoever is necessary for enjoying the same.").

[8] See, e.g., Packer v. Welsted, 82 Eng. Rep. 1244 (K.B. 1657) ("For it is not only a private inconvenience, but it is also to the prejudice of the public weal, that land should lie fresh and unoccupied."), translated in Michael V. Hernandez, Restating Implied, Prescriptive, and Statutory Easements, 40 Real Prop. Prob. & Tr. J., Spring 2005, at 75, 79 (identifying Packer v. Welsted as "[t]he first articulation" of "a public policy against landlocked or unproductive tracts").

[9] A memorandum from the Virginia Department of Conservation and Recreation (DCR) was also submitted to the VMRC. The memorandum recommended "coordination with the VDGIF [Department of Game and Inland Fisheries] to ensure compliance with protected species legislation" regarding the presence of the threatened wood turtle at the creek but stated that there

engineer added that the bridge had the effect of protecting the stream from contaminates that could be deposited from vehicular traffic fording the stream. The VMRC likewise considered the evidence that this stream, typically "only a few inches deep," did not implicate any "navigation issues," and posed no threat to French's property from flooding. App. at 486.

We review these facts not to signal our agreement with them or to evaluate the wisdom of issuing a permit based upon them. Like the circuit court, we have "no authority under VAPA to reweigh the facts in the agency's evidentiary record" or to decide *de novo* whether we would issue a discretionary permit under these circumstances. Boone, 52 Va. App. at 61-62, 660 S.E.2d at 708. The VMRC's factual findings can be overturned "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Id. at 62, 660 S.E.2d at 708 (internal quotation marks omitted). French's challenge to the permit falls far short of satisfying this standard.[10]

III.

In sum, French's procedural due process challenge fails because the VMRC permit did not deprive her of any property rights. Her VAPA challenge to the permit fails because the

---

were no other "comments regarding the scope of this project." App. at 527-28. The VDGIF found that "wood turtles were not likely harmed" by the bridge and merely advised that Foor be given educational literature in order to "avoid[]/minimiz[e] impacts" on the turtle. Id. at 529. The VMRC staff report likewise recorded that "Staff ha[d] conducted a public interest review for the after the fact application. Comments received from the Department of Game and Inland Fisheries (DGIF) and Department of Conservation (DCR) indicate the project is acceptable with regard to impacts upon natural resources in the area." Id. at 516.

[10] Nothing in our analysis affects French's recourse, if any, to common-law remedies or injunctive relief, provided that she can assert a successful cause of action. As the VMRC concedes on appeal, the fact of a VMRC permit would not implicate res judicata or collateral estoppel defenses in private litigation between the parties. See Oral Argument Audio at 12:13-13:05; accord Zappulla, 239 Va. at 571, 391 S.E.2d at 68; Appalachian Power Co., 214 Va. at 534, 201 S.E.2d at 766 ("Only what is adjudicated can be res judicata. Administrative action other than adjudication cannot be res judicata." (internal quotation marks omitted)).

VMRC's decision to issue the permit cannot be judicially deemed arbitrary and capricious.  We thus affirm the circuit court's final order upholding the VMRC decision.

Affirmed.