COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

**UNPUBLISHED**

COMMUNITY ALTERNATIVES VIRGINIA

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1882-17-4        JUDGE MARY BENNETT MALVEAUX
                                          AUGUST 7, 2018

CYNTHIA B. JONES, DIRECTOR,
 VIRGINIA DEPARTMENT OF MEDICAL
 ASSISTANCE SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Clifford L. Athey, Jr., Judge

James P. Holloway (Susan A. Turner; Baker Donelson Bearman
Caldwell & Berkowitz, PC, on briefs), for appellant.

Abrar Azamuddin, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General; Kim
F. Piner, Senior Assistant Attorney General, on brief), for appellee.

      The Director of the Department of Medical Assistance Services ("DMAS") issued a final

agency decision ("FAD") requiring Community Alternatives Virginia ("CAV") to reimburse

DMAS $1,080,226.29 based on a failure to maintain adequate documentation.  CAV appealed the

FAD to the Circuit Court for the City of Winchester ("circuit court"), which affirmed the decision.

CAV now appeals to this Court, arguing that the circuit court erred:  (1) in upholding DMAS's

retraction of  Medicaid payments without a showing that CAV materially breached the provider

agreement, where CAV did not agree to displace the common law default rule of material breach

and case law applicable to the time at issue required DMAS to show a material breach to justify

retraction; (2) in upholding DMAS's exclusion of CAV's evidentiary exhibits; and (3) in finding

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that the FAD was supported by substantial evidence. For the reasons that follow, we affirm the decision of the circuit court.

## I. BACKGROUND

DMAS is the state agency responsible for the administration of the medical assistance program known as Medicaid. See Psychiatric Sols. of Va., Inc. v. Finnerty, 54 Va. App. 173, 176, 676 S.E.2d 358, 360 (2009). The Director of DMAS ("Director") is authorized to administer Virginia's Medicaid plan and "expend federal funds" in accordance with federal and state laws. Code § 32.1-325(D)(1). DMAS contracts with health care establishments to provide services to carry out the provisions of the Medicaid plan. Code § 32.1-325(D)(2).

CAV is a licensed provider for congregate and day support for individuals with intellectual disabilities. It has been a Medicaid provider since March 1, 2002, when it signed a Participation Agreement ("provider agreement") with DMAS. In part, this agreement specifies that CAV "agrees to comply with all applicable state and federal laws, as well as administrative policies and procedures of [Virginia's Medicaid program] as from time to time amended." DMAS's policies and procedures are set forth in the agency's Mental Retardation/Intellectual Disability Community Services Manual ("MR/ID Manual").

DMAS routinely conducts utilization reviews, or audits, to ensure that the services provided to Medicaid recipients are medically necessary, appropriate, and provided by a qualified provider. Manual, ch. VI, at 21. DMAS began an audit of CAV on October 15, 2012, and requested medical records and staff qualifications from CAV for the six-month time period from January 1 to June 30, 2012. The auditor conducting the review noted several deficiencies in CAV's documentation. Consequently, DMAS expanded the audit to include the time period from March 1, 2011 to June 30, 2012.

On August 28, 2014, DMAS sent CAV a preliminary findings report which noted several deficiencies in CAV's medical records, and assigned various error codes to identify those deficiencies. On April 14, 2015, DMAS sent CAV an overpayment notification letter, stating that billing errors identified by DMAS in its review resulted in an overpayment to CAV in the amount of $1,178,579.39.

CAV appealed the overpayment determination and requested an informal fact finding conference ("IFFC"), which was held on August 5, 2015. Following the IFFC, CAV provided DMAS with additional documentation, and in light of this new documentation, DMAS removed some error codes and revised the overpayment amount to $1,120,649.22. An IFFC decision affirming the revised overpayment determination was issued on November 5, 2015.

CAV appealed the IFFC decision, and on December 15, 2015, DMAS appointed Howard M. Casway ("hearing officer") to hear CAV's formal administrative appeal. An evidentiary hearing ("formal hearing") was held before the hearing officer, and on April 25, 2016, he issued his recommended decision ("RD"). The hearing officer found that, under Culpeper Reg'l Hosp. v. Jones, 64 Va. App. 207, 767 S.E.2d 236 (2015), DMAS was permitted to enforce the provider agreement without a showing of material breach or substantial compliance. The hearing officer further found that CAV had demonstrated that DMAS erred in the overpayment amount calculated for one error code, but upheld all other overpayment calculations.

On June 24, 2016, the Director issued the FAD, accepting in part and rejecting in part the RD. The Director agreed with the hearing officer's interpretation of Culpeper, holding that DMAS was permitted to enforce the terms of the provider agreement. The Director further upheld the overpayment calculations in their entirety for all but three error codes, and required CAV to reimburse DMAS a revised overpayment amount of $1,080,226.29.

CAV appealed the FAD to the circuit court. On October 24, 2017, the court issued its decision upholding the FAD. This appeal followed.

## II. ANALYSIS

### A. Material Breach of Provider Agreement

On appeal, CAV argues that DMAS erred in concluding that it could retract Medicaid payments from CAV without demonstrating a material breach of the provider agreement.[1]

This issue concerns a matter of law, and we review an agency's legal determinations *de novo*, while taking "due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 2.2-4027. See also 1st Stop Health Services, Inc. v. Department of Medical Assistance Services, 63 Va. App. 266, 277, 756 S.E.2d 183, 189 (2014).

---

[1] Under this assignment of error, CAV makes two distinct arguments. First, CAV argues that DMAS was not permitted to retract Medicaid payments without a showing that CAV had materially breached the provider agreement, since CAV had not agreed to displace the common law default rule requiring a material breach of contract. Second, CAV contends that DMAS erred in retracting Medicaid payments when the case law applicable to the period when CAV provided the services at issue required DMAS to show a material breach of the provider agreement; thus, to the extent that Culpeper created a new rule not requiring a showing of material breach for retraction, it should not apply retroactively.

We note that throughout its appeal before DMAS, CAV argued only that the retractions were assessed in error because CAV's documentation deficiencies did not constitute a material breach of the provider agreement. However, we find that CAV's argument to the agency regarding material breach was specific enough to preserve its first argument with respect to displacement, because that argument cited Culpeper, the relevant case discussing displacement in the context of provider agreements. By contrast, we find that because CAV never argued before the agency that Culpeper should not be applied retroactively to the claims at issue, CAV waived that issue and is precluded from raising it now on appeal. "Principles of procedural default, analogous to those governed by Rule 5A:18, apply to agency decisions judicially challenged on appeal." French v. Virginia Marine Res. Comm'n, 64 Va. App. 226, 232 n.2, 767 S.E.2d 245, 249 n.2 (2015). "[A]n appellant, under the provisions of the [Administrative Process Act], may not raise issues on appeal from an administrative agency to the circuit court that it did not submit to the agency for the agency's consideration." Pence Holdings, Inc. v. Auto Center, Inc., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995); see also Doe v. Va. Bd. of Dentistry, 52 Va. App. 166, 176, 662 S.E.2d 99, 104 (2008) (*en banc*).

- 4 -

CAV invokes the contract principle of material breach, arguing that because the breaches in its documentation were minor, DMAS could not retract payments. Under this principle, a party in breach of a contract "is not entitled to enforce the contract," unless the breach "did not go to the 'root of the contract'" and involves only "a minor part of the consideration." Culpeper Reg'l Hosp. v. Jones, 64 Va. App. 207, 213, 767 S.E.2d 236, 239 (2015) (quoting Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997)). Stated differently, a breaching party is prevented from enforcing a contract if the breach is "material," that is, "a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." 1st Stop, 63 Va. App. at 279, 756 S.E.2d at 190 (quoting Psychiatric Sols., 54 Va. App. at 190, 676 S.E.2d at 367).

However, our Court in Culpeper held that, in the context of administrative agency contracts with providers, general default legal principles of contract interpretation can be displaced by the specific terms within the contract itself. See Culpeper, 64 Va. App. at 213-15, 767 S.E.2d at 239-40. On brief, CAV itself acknowledges that Culpeper stands for the proposition that the default rule of material breach can be displaced by the parties' agreement. However, it attempts to distinguish Culpeper from the instant case by arguing that the record does not reflect any "clear and knowing" agreement by CAV to displace the default rule of material breach. We are not persuaded by CAV's argument, as any attempt to distinguish Culpeper fails due to the language of the provider agreements in both cases.

In Culpeper, the provider argued that it had substantially complied with the regulations governing the Medicaid program and that its failures in regard to certification were minor. Id. at 213, 767 S.E.2d at 239. The provider agreement in Culpeper stated that the provider was required to "comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended," including the provisions set forth in

- 5 -

DMAS's Hospital Manual. Id. at 209, 767 S.E.2d at 238. The Court in Culpeper held that, contrary to the provider's argument, "the language of the provider agreement control[ed]," and noted that one of the provisions of the Hospital Manual unambiguously required providers "'to refund payments made by Medicaid if they are found to have . . . failed to maintain any record or adequate documentation to support their claims.' Hosp. Manual, supra, ch. VI, at 2." Id. at 215, 767 S.E.2d at 240. The Court then found that the provider had breached the provider agreement by failing to certify the need for inpatient care; it concluded that the remedy for the breach was controlled by the provision in the parties' agreement that a provider must refund Medicaid payments if the claim was not adequately documented. Id. Thus, "DMAS could enforce the terms of the agreement and require repayment for patients that were admitted without the required certification." Id.

Here, the provider agreement contains essentially the same language as the provider agreement in Culpeper—by signing the agreement, CAV "agrees to comply with all applicable state and federal laws, as well as administrative policies and procedures of [the Virginia Medicaid program] as from time to time amended," including the policies set forth in DMAS's MR/ID Manual. Further, similar to the manual provision cited in Culpeper, the MR/ID Manual requires a provider to "refund payments made by Medicaid if they are found to have billed Medicaid contrary to law or regulation, failed to maintain any record or adequate documentation to support their claims, or billed for medically unnecessary services." MR/ID Manual, ch. VI, at 21. This language, like the manual language in Culpeper, allows retraction of Medicaid payments if the provider "fail[s] to maintain any record or adequate documentation to support their claims." Id. As in Culpeper, we find that the language of the provider agreement controls and that these specific terms displace the general default rule of material breach. Thus, if CAV has breached the provider agreement by failing to maintain proper documentation, the remedy

- 6 -

for such breach is controlled by the MR/ID Manual's retraction provision requiring that the provider refund Medicaid payments if the claim was not adequately documented. Consequently, DMAS did not err in finding that it was entitled to retract Medicaid payments without a showing of a material breach of the provider agreement.

### B. Exclusion of CAV Exhibits

CAV further argues that DMAS erred in excluding its exhibits presented at the administrative hearing stage. Because CAV has not demonstrated that DMAS's exclusion of the exhibits had any influence on the outcome of the FAD, we find any alleged error harmless at most.

On December 4, 2015, CAV filed notice of its formal appeal. 12 VAC 30-20-560 provides that "[a]ll documentary evidence upon which DMAS or the provider relies shall be filed within 21 days of the filing of the notice of formal appeal."

During a pre-hearing telephone conference on January 7, 2016, the hearing officer stated that he had received DMAS's documentary evidence submission. However, he had only received a December 1, 2015 letter and an attached exhibit from CAV. CAV stated that it had sent three binders of supporting documentation, exhibits B, C, and D, which DMAS had received, but the hearing officer had not. In a pre-hearing procedural order issued January 11, 2016, the hearing officer noted that while CAV timely transmitted three binders of documentary evidence to DMAS, it neglected to simultaneously file this evidence with him. The order stated that "[u]pon CAV's assurances that it would remedy its non-compliance by delivering its documentary evidence to the hearing officer by overnight delivery," CAV's three exhibits were marked for identification purposes and were tentatively admitted into the hearing record, subject to any objection by DMAS. During the formal hearing, the hearing officer admitted CAV's exhibits B, C, and D into evidence, with DMAS objecting to their admission.

Contrary to this determination, in the FAD, the Director found that the hearing officer's decision to admit the exhibits was an error of law as it violated the 21-day requirement of 12 VAC 30-20-560(B). However, the Director then stated that "even if the documents were considered in this appeal, the results of this decision would not be changed as explained in further detail herein." In the FAD's factual findings section, the Director further noted that one of the hearing officer's proposed findings of fact was accepted, with the clarification that CAV's evidence included additional documents, and that CAV's documentation binders did not always match. The Director then stated that "[a]ll of the Provider's documents were considered in rendering this Final Agency Decision." The Director then cited CAV's exhibits at several points in her review of the assigned error codes.

On appeal, the circuit court upheld DMAS's decision to exclude the exhibits. In the instant case, we need not determine whether the circuit court erred in this determination, as it is clear from the record that the exclusion of CAV's exhibits did not impact the FAD.[2]

Code § 8.01-678 provides, in pertinent part, that:

> [w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

See also Mall Amusements, LLC v. Va. Dep't of Alcoholic Bev. Control, 66 Va. App. 605, 617, 790 S.E.2d 245, 251 (2016) (quoting Code § 8.01-678 in the context of non-constitutional harmless error analysis). A non-constitutional error is harmless if, "when all is said and done," we can conclude that "the error did not influence the [factfinder], or had but slight effect." Id.

---

[2] We do not suggest that the circuit court's determination constituted error. Rather, we simply do not reach the issue because it is unnecessary to do so to resolve the case. See Commonwealth v. Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) ("The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).

(alteration in original) (quoting Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011)). Here, the Director determined in the FAD that the hearing officer's decision to enter CAV's exhibits into evidence was an error of law because the exhibits were not filed within 21 days of CAV's notice of appeal. However, the FAD itself clearly considered these documents in determining whether CAV had met its burden of proof in demonstrating that DMAS's retractions of Medicaid payments were assessed in error. Therefore, any error by the circuit court in finding that the exhibits should have been excluded was harmless in light of the fact that the documents were actually considered by DMAS as part of the documentary evidence in the FAD.

## C. FAD Not Supported by Substantial Evidence

Finally, CAV argues that there was a lack of substantial evidence supporting the retraction of payments under the assigned error codes.[3]

In an appeal of an agency decision, "the party complaining of the agency action must demonstrate an error of law, which error may include 'the substantiality of the evidentiary

---

[3] As the party complaining of agency action, CAV has the burden to designate and demonstrate an error of law subject to review by this Court. See Code § 2.2-4027. "Judicial review of an agency decision is limited to determining '1. [w]hether the agency acted in accordance with law; 2. [w]hether the agency made a procedural error which was not harmless error; and 3. [w]hether the agency had sufficient evidential support for its findings of fact.'" Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 480, 694 S.E.2d 290, 296 (2010) (alterations in original) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)). CAV's third assignment of error alleges that the FAD was not supported by substantial evidence, an argument involving "[w]hether the agency had sufficient evidential support for its findings of fact." Id. CAV's opening brief recites the applicable standard of review for errors of law concerning substantial evidence, before stating, in a footnote, that "[t]o the extent any of the error codes are deemed to involve conclusions of law, the Decision's affirmance of the error code was an error of law." However, CAV provides no standard of review or principles of law in relation to conclusions of law for any of the error codes. Thus, for all of the error codes, we consider on appeal only those arguments that allege that the FAD was not supported by substantial evidence. See Rule 5A:20(e) (requiring the opening brief to contain "the standard of review and the argument (including principles of law and authorities) relating to each assignment of error").

support for findings of fact.'" Va. Ret. Sys. v. Blair, 64 Va. App. 756, 763, 772 S.E.2d 26, 29 (2015) (quoting Code § 2.2-4027).

> The meaning and application of the substantial evidence standard in the context of appellate review have been long established. As we have stated on numerous occasions, an appellate court applying the substantial evidence standard may "reject an agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion. 'Substantial evidence' refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Id. at 765, 772 S.E.2d at 30 (quoting Doctors' Hosp. of Williamsburg, LLC v. Stroube, 52 Va. App. 599, 607, 665 S.E.2d 862, 865 (2008)). In making the substantial evidence determination, "the reviewing court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). Further, in accordance with familiar principles of appellate review, "we review the facts in the light most favorable to sustaining [DMAS]'s action." Atkinson v. Virginia Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E. 2d 527, 530 (1985).

### 1. Error Code 916

Error Code 916 was applied to claims when "[t]he hours billed did not match the documentation in the [recipient] record."

CAV billed DMAS for services rendered to Medicaid recipients on a monthly basis. At the end of each calendar month, CAV submitted a single claim for each recipient who received services that month, requesting payment for the total number of units of services provided during the entire month. Dawn VanMetre, CAV's executive director, acknowledged at the formal hearing that, in some instances, CAV submitted claims that utilized the same date in both the "from" and "thru" date columns even though the claims represented an entire month's worth of

services. Thus, for those claims, the start and through dates were erroneously marked as the same date. VanMetre admitted that the through date was listed as the start date due to a computer error. However, she stated that CAV did not provide services to any recipients only on the first day of a month and that CAV had presented medical records to DMAS showing that services were actually provided for the clients at issue throughout the relevant months.

The hearing officer recommended upholding the retraction of payments under this error code, and DMAS accepted this recommendation. The circuit court upheld DMAS's determination.

On appeal, CAV argues that there was a lack of substantial evidence demonstrating that its clinical records did not support the number of units billed and, consequently, there is a lack of substantial evidence supporting the retractions under Error Code 916.[4] We are unpersuaded by this argument. The MR/ID Manual provides: "Dates of Service - Enter the "from and thru" dates in a 2-digit format for the month, day and year (e.g., 10/01/10). DATES MUST BE WITHIN THE SAME MONTH." MR/ID Manual, ch. V, at 12. Further, the MR/ID Manual defines "Date of Service" as the "date or span of days that services were received by an individual." CAV acknowledged that it improperly billed DMAS by using the same "from" and

---

[4] CAV also argues that retractions under Error Code 916 were unwarranted because providers are permitted to resubmit any claim for reconsideration within thirteen months from the date of the initial denied claim. See MR/ID Manual, ch V, at 2-3 ("Denied claims – Denied claims must be submitted and processed on or before thirteen months from date of the initial denied claim where the initial claim was filed within the 12 months limit to be considered for payment by Medicaid."). CAV argues that it was informed on August 28, 2014, of the through date errors and resubmitted its claims forms—with the correct through dates—in August 2015, within the 13-month time period permitted under the MR/ID Manual.

However, we need not reach the merits of this argument, as there is no evidence in the record that CAV actually resubmitted these claims to DMAS. The auditor testified at the formal hearing that she had no knowledge of CAV resubmitting the claims in August 2015, and the formal hearing record does not contain the August 2015 corrected claims submission. As these corrected claims were not made a part of the formal appeal record, DMAS was unable to consider CAV's assertion that these claims provided satisfactory documentary evidence under Error Code 916.

"thru" dates on certain claims forms, when the units of service listed on those dates were intended to cover the entire calendar month. Based upon CAV's own admissions, we find that substantial evidence supported DMAS's retractions under this error code.

### 2. Error Code 1104

Error Code 1104 was applied to claims when "[t]he documentation [submitted] did not contain the required quarterly review of the Individual Service Plan."

When a service recipient initially came to CAV, an Individual Service Plan ("ISP") was created for that recipient. The MR/ID Manual required quarterly review of ISPs. See MR/ID Manual, ch. IV, at 49 ("The Plan for Supports must be reviewed by the provider when the individual's needs change significantly and at least every three months."). At the formal hearing, VanMetre acknowledged that in some cases, CAV could not locate a quarterly review. Also, in many cases, the form had been prepared but not signed.

The hearing officer found that retractions were warranted due to any absence of a "properly signed quarterly review." DMAS accepted this recommendation only in part, finding that in the instances where CAV submitted an annual review in place of documentation of a fourth quarter review, retraction of payments under this error code would be removed. Accordingly, DMAS overturned retractions for recipients with an annual review in lieu of a fourth quarter review, but upheld all other retractions assessed under Error Code 1104. The circuit court affirmed DMAS's determination. The court specifically found that CAV's documentation revealed that over seventy claims did not have the required quarterly review and that CAV did not produce "any evidence that they performed the required quarterly review in these cases."

On appeal, CAV has not directed this Court to any part of the record in which there is documentation that it performed the quarterly reviews for the claims at issue. This Court "will

not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Nor is it this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*). As CAV had the burden to demonstrate that the retractions under this error code were assessed in error, and failed to do so, we find that substantial evidence supported DMAS's retractions under this error code.

### 3. Error Code 1107

Error Code 1107 was applied to claims when "[t]he number of units billed for specialized supervision was not supported by the documentation [submitted]."

DMAS assigned this error code based upon its determination that the number of service units billed for nighttime supervision for certain recipients was not supported by CAV's documentation. VanMetre testified that CAV had provided documentation of nighttime supervision in the form of bed check records and support notes. However, she acknowledged that some of the bed check forms CAV provided did not have the year listed on them and that many of the support notes did not state how many hours of nighttime supervision had been provided.

CAV also provided behavior management plans and ISPs in an attempt to provide documentation under this error code, because these documents included information indicating the recipients' need for and approval of nighttime supervision. Dolores Lindsey, the auditor employed by DMAS who conducted the review of CAV's documentation, indicated at the formal hearing that DMAS was not searching for documentation to justify the approval of supervision; rather, DMAS was attempting to verify that the amount of supervision billed for each night was

actually provided. According to Lindsey, this information should have been found either in the support notes or in bed check records.

The hearing officer recommended upholding the retraction of the payments under this error code, and DMAS accepted the hearing officer's recommendation. The circuit court found that DMAS's determination was supported by substantial evidence.

Here, the evidence demonstrates that CAV failed to properly document nighttime safety supports for the claims at issue. The MR/ID Manual provides that "safety supports may be delivered through the entire night, but only if assessment information documents ongoing night need." MR/ID Manual, ch. IV, at 69. Additionally, a regulation in effect at the time the services at issue were provided required that "the provider must maintain documentation of the date and times that services were provided and specific circumstances that prevented provision of all the scheduled services." 12 VAC 30-120-241(C) (now repealed). VanMetre testified at the formal hearing that many of the documents submitted by CAV for documentation—behavior management plans and ISPs—only related information as to the recipient's approval for night supervision, not the actual hours of supervision that were provided. VanMetre also acknowledged that several bed check forms and support notes were missing information relevant to documenting the nighttime supervision provided by CAV. Here, based upon CAV's own admissions, we find that substantial evidence supported the retractions made under this error code.

### 4. Error Code 1108

Error Code 1108 was applied to claims when "[t]he required copy of the most current DMAS-225 form was not found in the documentation submitted."

DMAS assigned this error code based upon its determination that the required copy of the most current DMAS-225 form was not found in the documentation submitted for seven recipients.

VanMetre testified that each DMAS-225 form was prepared by a case manager, not DMAS. The case manager was then required to send a copy to the Department of Social Services and to CAV. VanMetre stated that CAV attempted to obtain the missing DMAS-225 forms for two recipients, but the case manager was unable to locate the forms. VanMetre acknowledged CAV only attempted to obtain the forms for two recipients after the audit, and admitted that CAV did not submit any documentation under this error code for the other five recipients listed under this error code.

The hearing officer found that CAV had not demonstrated that the overpayment for Error Code 1108 was assessed in error, and DMAS accepted the hearing officer's recommendation. The circuit court found that there was substantial evidence supporting the FAD's determination.

On appeal, CAV argues that the retractions of payments under this error code were assessed in error because they were based on an outdated regulation that does not require retention of the DMAS-225 form, but rather requires providers to maintain a copy of the DMAS-122 form. CAV does not dispute that it did not have the DMAS-225 forms for any of the recipients at issue. Rather, it only challenges the regulations as having been rendered obsolete by new online systems and because of the DMAS' conversion from use of the DMAS-122 form to use of the DMAS-225 form.

CAV is correct that the relevant regulation requires the provider to maintain the DMAS-122 form. See 12 VAC 30-120-1530(B)(2)(f) ("The service providers must maintain, for a period of not less than six years from the individual's last date of service, documentation necessary to support services billed. . . . A copy of the current DMAS-122 Form."). However,

as acknowledged by CAV on brief, the DMAS-225 form replaced the DMAS-122 form. CAV admitted at the hearing that it could not produce copies of the DMAS-225 forms for the recipients at issue. CAV was aware of the change in the form required to document its service provisions, and the provider agreement specifically requires CAV to comply with all DMAS policies "as from time to time amended." Thus, CAV was required to maintain documentation using the new DMAS-225 form and failed to do so for the recipients at issue. Accordingly, substantial evidence supports DMAS's retractions under this error code, as CAV clearly did not produce the required documentation.

### 5. Error Code 1114

Error Code 1114 was applied to claims when "[t]he documentation did not contain the required Individual Service Authorization Request ("ISAR")."

This error code was assigned to claims for six service recipients whose records were missing the required ISAR. For one recipient, VanMetre testified that CAV had submitted a preauthorization notification letter, but conceded that CAV did not maintain an approved ISAR for that recipient. However, she testified that CAV "had [an ISAR] that we submitted to the case manager, but it wasn't stamped." The hearing officer noted that CAV, in its documentary evidence, did not submit any ISARs for the other five recipients.

The hearing officer recommended upholding the retraction of the payment under this error code, and DMAS accepted the hearing officer's recommendation. The circuit court upheld DMAS's determination.

The MR/ID Manual requires, as part of its provider documentation requirements, that "[t]he appropriate ISAR must be completed and submitted to the case manager with the Plan for Supports." MR/ID Manual, ch. IV, at 47-48. Here, CAV has not submitted evidence demonstrating that it completed and submitted to the case managers ISARs for the recipients at

issue. In the absence of any such evidence, we conclude that substantial evidence supported DMAS's retractions under this error code.

### 6. Error Code 1127

Error Code 1127 was applied to claims when "[t]he documentation did not contain the required notes/checklists for the dates of service billed."

DMAS assigned this error code when CAV's documentation did not contain the required notes/checklists for 29 recipients. DMAS policy does not require that a specific form be used and allows the use of a checklist, support log, or progress note, so long as the documentation used contains the required information. 12 VAC 30-120-229(F)(3). The hearing officer noted that for 18 recipients, CAV did not submit any checklists, support logs or progress notes in its documentary evidence.

At the formal hearing, VanMetre testified that she thought that CAV could use the checklist form recommended by DMAS, or it could use the progress notes detailing what the recipient did throughout the day. VanMetre acknowledged that when CAV reviewed its records, checklists and progress notes were missing for some recipients.

Lindsey testified that DMAS wanted to see both checklists and the progress notes in each claim because CAV routinely included both in its documentation. However, on re-direct, she clarified that she would have accepted either a checklist or a progress note, as long as either document included all of the "required components."

The hearing officer recommended upholding the retraction of payments under this error code, and DMAS accepted the hearing officer's recommendation. The circuit court upheld DMAS's determination.

On appeal, CAV argues that DMAS based its retraction on its erroneous finding that CAV routinely used both a checklist and progress notes to document services billed. Thus, CAV

contends, DMAS expected CAV to provide both forms of documentation as a "best practice," although indisputably there is no requirement that CAV maintain both forms of documentation.

This argument is without merit. The auditor specifically testified that retractions were not assessed if either a checklist or progress notes had provided all of the required information. Here, there were many claims for which CAV submitted neither a progress note nor a checklist; the rest, as testified to by the auditor, were issued retractions because the documentation provided did not contain all of the necessary information. CAV has not directed this Court to a portion of the record where it provided this documentation for any of the claims at issue. Based upon the record, we find that substantial evidence supports DMAS's retractions under Error Code 1127.

### 7. Error Code 1141

Error Code 1141 was applied to claims when "[t]he Plan for Supports was incomplete or missing required elements."

DMAS assigned this error code to several claims where the required person-centered reviews were not signed.

At the formal hearing, VanMetre testified that a person-entered review is synonymous with a quarterly report and is essentially a status report on the recipient's progress. VanMetre acknowledged that some of the person-centered reviews were not signed by CAV; however, all of the reviews included all the required clinical information.

The hearing officer found that CAV had not demonstrated that the overpayment under Error Code 1104 was assessed in error, because the MR/ID Manual provided that "[a]ll significant changes to outcomes occurring at the annual or at any point during the Plan for Support year must be documented and signed by the individual, family member / caregiver, as appropriate, all affected providers and the case manager." MR/ID Manual, ch. IV, at 49. The

hearing officer determined that CAV had "presented insufficient factual proof to substantiate its claim that there is no requirement for a quarterly review to be signed by a recipient or recipient's caretaker." In the FAD, the Director rejected this recommendation as an error of law and DMAS policy. The Director found that the relevant provisions of the MR/ID Manual, when read together, establish that the service provider "must document the quarterly review of the Plan for Supports, but that the quarterly review is not required to be signed by the individual (or family member/caregiver) unless there are 'significant changes to outcomes occurring at the annual or at any point during the Plan for Supports year.'" MR/ID Manual, ch. IV, at 49. In the FAD, the Director reversed all claims assessed under Error Code 1141 when the recipient or their caregiver did not sign a quarterly review, but upheld all claims assessed under this error code due to CAV's failure to sign the quarterly review. The circuit court found that DMAS's determination was supported by substantial evidence.

On appeal, CAV argues that the FAD upheld Error Code 1141 "because CAV allegedly did not sign some of the quarterly reviews . . . [h]owever, quarterly reports were signed by the caregiver who prepared the form." However, CAV has not directed this Court to any portion of the record where DMAS issued retractions for quarterly reviews that had been signed by the caregivers who prepared the forms. CAV had the burden to demonstrate error by DMAS, and has failed to do so. Thus, we find the circuit court did not err in finding substantial evidence to support DMAS's retractions under this error code.[5]

---

[5] We further note that CAV argues that under this error code, "a reasonable person would necessarily conclude that CAV's documentation complied with regulatory requirements." To the extent that this is an argument that DMAS erred in interpreting its own regulations, we find that CAV has not preserved that issue for our review, as it involves a contention that DMAS committed an error of law. See *supra* note 4.

## 8. Error Code 1144

Error Code 1144 was applied to claims where "the Individual Service Plan lacked documentation of a schedule of tasks to be performed."

DMAS assigned this error code to claims for which a schedule or timetable of tasks to be performed as part of the ISP was missing. At the formal hearing, VanMetre testified that she believed the auditor was looking for an actual schedule and that she thought CAV submitted sufficient documentation to demonstrate a schedule of tasks for the relevant recipients. VanMetre admitted, however, that some of CAV's documentation under this error code "did not make it into one of our tabs, but it's in DMAS's exhibits."

The hearing officer recommended upholding the retraction of the payments under this error code, and DMAS accepted the hearing officer's recommendation. The circuit court upheld DMAS's determination.

The MR/ID Manual provides that "[t]he Plan for Supports contains, at a minimum, the following elements . . . [a] timetable of activities and the services/supports provided to accomplish the desired outcomes as described in the Plan for Supports." MR/ID Manual, ch. IV at 47. Here, the circuit court noted that most of the recipients' plan for supports were missing the required timetable and that CAV admitted that some of its documentation was not included in its hearing exhibits. On appeal, CAV has not directed this Court to any portion of the record where it provided sufficient documentation for the recipients at issue that would meet the timetable requirement. Thus CAV has failed to meet its burden in proving that DMAS's retractions under this error code were assessed in error.

## 9. Error Code 1145

Error Code 1145 was applied to claims for which "[t]he documentation submitted did not contain an attendance log or similar documentation to support the date, type of services rendered

and number of hours and units billed for day support service, including the specific time period of attendance."

DMAS assigned this error code when there was no documentation of an attendance log or similar documentation to provide the information referenced above.

At the formal hearing, VanMetre testified that CAV staff developed a census sheet based upon the recipients the staff provided care for and that these sheets were compiled at the end of each month. CAV's business manager then processed the census sheets based upon the amount of hours or service units provided. VanMetre conceded that the census sheets used by CAV were submitted as part of the informal appeal, but were not made a part of the record of the formal appeal.

The hearing officer recommended upholding the retraction of the payments under this error code, and DMAS accepted the hearing officer's recommendation. The circuit court upheld DMAS's determination.

On appeal, CAV argues that documentation is not required to be in a particular format and that CAV proffered documents to demonstrate the nature of the services it provided. However, these proffered documents—the census sheets—were not made part of the agency record, and the FAD correctly found that they could not be considered as documentation of attendance logs under this error code. Based upon this record, we cannot say that DMAS's retractions under this error code were assessed erroneously.

III. CONCLUSION

We conclude that DMAS did not err in finding it was entitled to retract Medicaid payments without a showing of a material breach of the provider agreement. Further, any error alleged in CAV's second assignment of error was harmless, at most. Finally, we find that

substantial evidence supports DMAS's retractions of Medicaid payments under each assigned error code.  Accordingly, we affirm the decision of the circuit court.

<u>Affirmed.</u>